[S. F. No. 12440. Department Two.—September 29, 1928.]

CHARLES J. BASS et al., Appellants, v. ERNEST C. HUETER et al., Respondents.

286

W. H. Morrissey and Brobeck, Phelger & Harrison for Appellants.

W. E. Cashman, W. H. Metson and Chickering & Gregory for Respondents.

SHENK, J.—This is an appeal from a judgment of nonsuit in an action on a claim against the estate of Ernest L. Hueter, deceased. The plaintiffs alleged that on or about the seventeenth day of October, 1903, Ernest L. Hueter borrowed from Ellen Bass the sum of $18,000 and agreed in writing to repay the same, as evidenced by a promissory note of which the following is a copy:

"18,000.                              17th day of October, 1903

"I promise to pay to Ellen Bass or order, the sum of eighteen thousand (18,000) Dollars, with interest thereon at the rate of six (6%) per cent per annum, three months after notice after one year from date.

"ERNEST L. HUETER."

Ellen Bass died on June 17, 1904. Her estate was administered upon and on September 5, 1905, was distributed to the plaintiffs herein. Ernest L. Hueter died on November 9, 1923. His will was admitted to probate and the defendants were appointed as executors. Thereafter, on April 4, 1924, a notice on behalf of said distributees, the plaintiffs herein, was caused to be served upon the defendants as such executors to pay said promissory note. Upon the failure to pay the note and the rejection of a claim based thereon against the estate of Hueter, this action was brought.

By answer the defendants, among other things, pleaded the statute of limitations as a complete bar to any relief demanded by the plaintiffs. At the trial it appeared that no notice or demand for payment had ever been given or made upon Ernest L. Hueter during his lifetime either by Ellen Bass, the payee of the note, during her lifetime, nor by or on behalf of the plaintiffs herein until the aforesaid notice of April 4, 1924.

The defendants' motion for a nonsuit was made and granted on the ground that no special circumstances appeared to relieve the plaintiffs from the bar of the statute and that therefore the statutory period of limitations had long since run. Whether the trial court was right in so

deciding is the crucial point on this appeal. The determination of the point rests primarily upon the effect to be given the clause in the note fixing the maturity thereof "three months after notice after one year from date." By the use of this language the intention of the parties was clear that upon the expiration of one year from October 17, 1903, the payee of the note could notify the maker that the note would be due three months thereafter.

■ It was said in *Williams* v. *Bergin*, 116 Cal. 56 [47 Pac. 877], with the citation of many cases: "The rule is well settled that when the plaintiff's right of action depends upon some act which he has to perform preliminarily to commencing suit, and he is under no disability or restraint in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by a delay in performing such preliminary act, and that if the time within which such act is to be performed is indefinite or not specified, a reasonable time will be allowed therefor, and the statute will begin to run after the lapse of such reasonable time." And it has been uniformly held that unless there are peculiar circumstances affecting the question, a reasonable time is a period coincident with that provided in the statute of limitations for barring the action. (*Vickrey* v. *Maier*, 164 Cal. 384 [129 Pac. 273]; *Thomas* v. *Pacific Beach Co.*, 115 Cal. 136 [46 Pac. 899].) ■ Where, under the contract of the parties, a notice is required to be given or a demand required to be made, a party cannot prevent the statute from running by failing to give the notice or make the demand. (*Harrigan* v. *Home Life Ins*. *Co.*, 128 Cal. 531 [58 Pac. 180, 61 Pac. 99]; 16 Cal. Jur. 492.) The general rule is too well settled to require further citation of authority, especially with reference to obligations for the direct payment of money such as we have in this case.

It has been noted that the promissory note in question was dated October 17, 1903. By the terms thereof the notice required could have been given on and after October 17, 1904. It was not given until April 4, 1924, or nearly twenty years after it could have been given, and the statute had long since run unless circumstances were present and continued which excused the delay. Such circumstances may appear on the face of the written obligation. At least the intention of the parties is to be determined by an inspection

of the document itself. ■ If the terms of the instrument be plain and certain on the subject no resort to extraneous evidence may be had to determine the intention of the parties.

■ There is nothing on the face of the note here in question which would indicate that it was the intention of the parties that the maturity of the note should be delayed indefinitely after the expiration of one year and three months. It is clear that it was intended that the payee of the note could fix the maturity of the note by notice given after one year from its date. ■ The plaintiffs call attention to the fact that contemporaneously with the execution of the note a pledge agreement was entered into between the parties wherein the maker of the note, as pledgor, agreed to pledge 2,384 shares of the capital stock of the Bass-Hueter Paint Company as security for the payment of the note and to that end to indorse certificates for that amount of stock and place the same in the hands of a third party as pledge-holder; that in this agreement the terms of the note that it should be payable after "three months notice after one year from date" were recited with the alternative "at any time prior to maturity at the option of the pledgor"; that the pledgor should have the right to vote the pledged stock "at all meetings of the stockholders of said company which may be held until said note shall have been paid"; and that a sale of the stock was to be allowed only if the principal and interest of said note was not paid "when due according to the terms thereof." Accordingly it is urged that the provisions of this agreement 'are consistent only with a purpose to postpone payment. The provisions of this agreement may, of course, be resorted to in order to determine the intention of the parties. But we cannot agree that the terms of the agreement evidence any intention to postpone the maturity of the note indefinitely after the expiration of the fifteen months' period. On the contrary, the agreement is entirely consistent with the purpose expressed in the note and the law would read into the provisions of both instruments the obligation to give the required notice within a reasonable time after it could be given by the payee or owner of the note.

■ It remains to be seen whether the evidence in the record *dehors* the note was sufficient to justify the conclusion

that the holder of the note was laboring under any restraint or disability which would excuse the delay in the performance of the act necessary to mature the note within a reasonable time. Ellen Bass, the payee, died before the expiration of the one year from the date of the note. She, therefore, had no opportunity to give the notice. Edith B. Lindsay, one of the plaintiffs herein, was appointed executrix of her will. By order of court, duly entered on September 5, 1905, the estate was distributed. After distributing specific items of property, the residue, including "any other property not now known or discovered, which may belong to the said estate," was distributed to the surviving children of the deceased, the plaintiffs herein. Edith B. Lindsay, one of the plaintiffs, testified that in December, 1923, she found the note and the pledge agreement in an old trunk containing some of the effects of her deceased mother, but that by inadvertence the note had been destroyed. The pledge agreement was offered in evidence, but it did not contain a copy of the note. · The contents thereof were proved by the testimony of Mrs. Lindsay to the effect that she had seen the note in December, 1923, and remembered the form thereof. Mrs. Lindsay further testified that she had a conversation with her mother shortly prior to June, 1904, in which her mother requested her to look for the papers with regard to what Ernest L. Hueter owed her; that she made a search for the same, but was unable to find them; that about two months after her mother's death and after she had been appointed executrix of her mother's estate, she had a conversation with Ernest L. Hueter in which she stated to him that she was unable to account for $18,000 of the money owing to her mother and that Mr. Hueter replied: "Show me the papers. If you will produce any papers showing that I owe you any money, I will pay it." No effort was thereafter made by Mrs. Lindsay or anyone else, so far as the record discloses, to obtain the payment of said indebtedness during the lifetime of Ernest L. Hueter. In December, 1923, Mrs. Lindsay addressed a letter to the firm of Morrison, Dunne and Brobeck at San Francisco, in which she inquired about the pledge agreement of October 17, 1903, and received a reply that all the papers, books, and office records of Mr. Morrison's firm had been destroyed in the conflagration of 1906 and that the

documents sought undoubtedly had been destroyed at that time; that search had nevertheless been made among Mr. Morrison's papers for the document without success. Mr. Morrison had died about two years prior to this correspondence between Mrs. Lindsay and the firm of Morrison, Dunne and Brobeck.

From the foregoing it is observed that no step was taken by anyone claiming an interest in said estate or the alleged indebtedness represented thereby to enforce payment during all the time from October 17, 1904, until after the death of the maker of the note in November, 1923, a period of over nineteen years. It further appears from the record that Mrs. Lindsay was actively engaged in the settlement of her mother's estate in 1904 and 1905, with notice of a claimed indebtedness in favor of her mother's estate in the sum of $18,000, but did nothing, as executor of her will or as distributee and co-owner of the note, to ascertain the status of the claim other than as above outlined. The trial court decided that the defense of the statute of limitations had been successfully interposed. We think the record on this point presented a question of law and that it cannot be said that the court was unjustified in granting the motion for a nonsuit.

The plaintiffs rely on the cases of *Neale* v. *Morrow*, 150 Cal. 414 [88 Pac. 815], and *Vickrey* v. *Maier*, 164 Cal. 384 [129 Pac. 273], as supporting their contention that the documents themselves evidence an intention that the maturity of the note should be postponed until a notice had been actually served upon the maker. In each case the general rule which we conclude is applicable to the present case was recognized, but it was determined that from the form of the documents themselves it was in the contemplation of the parties that the time of payment should be indefinitely postponed. The Neale case was an action on a promissory note payable "five days after actual demand." The note was one of fifty notes for $5,000 each executed in favor of an insurance company, the whole to constitute a guarantee fund required by a statute of this state which provided that the notes should remain with the company as part of the assets thereof and be liable for all of its debts next after its assets from premiums and other sources, exclusive of capital stock, until the net earnings of the company over and above cer-

tain items would be equal to the original amount of such guarantee fund and of the capital stock. The statute further provided that when this fixed capital was attained all notes in the fund remaining in the company's control should be surrendered to the makers thereof, but that until that time no guarantee note should be withdrawn from the fund unless another note of equal solvency should be substituted therefor, and not then unless with the unanimous approval of the board of directors then in office, and of all the other parties liable on the rest of the notes comprising the guarantee fund. Interest at the legal rate was to run only after actual demand. In the meantime a commission of five per cent per annum was required to be paid to the maker of each note while the same was outstanding and if the maker should pay the note the company was to pay the maker twelve per cent on the amount so paid until the said amount be repaid to the maker by the company. The contingency provided by the statute which would justify the collection or surrender of the note, to wit, the acquisition of a fixed capital in the amount required by the statute, never happened. In fact the company became insolvent and the note sued on had to be resorted to in order to satisfy those for whose benefit the guarantee fund notes had been accumulated. There is no possible doubt that the parties to the note sued on in that case contemplated that the maturity of the note should be postponed until such time as the statute required.

The case of *Vickrey* v. *Maier, supra,* also relied on by the plaintiffs, does not support their contention. It involved the construction of a contract for the purchase and sale of personal property at a fixed price at the option of the seller, and the action was one in effect "to enforce performance of a contract to buy personal property." The court applied the same rule as is applicable in the case of a sale of real property. It was decided that under the contract there in question the parties contemplated that there might be a delay in the exercise of the option therein provided for and that the action was not barred.

Other points are made by the plaintiffs. Discussion of them is made unnecessary by reason of the determination of the main question.

The judgment is affirmed.

Richards, J., and Langdon, J., concurred.