[Civ. No. 4289. Third Appellate District.—July 27, 1931.]

LUCIUS M. FALL, Appellant, v. LINCOLN MORTGAGE COMPANY (a Corporation), Respondent.

Fall & Fall, Lucius M. Fall and J. Gilbert Fall for Appellant.

Fickeisen & Richardson and J. E. Haley for Respondent.

JAMISON, J., *pro tem.*—This is an action for money had and received. Defendant answered denying the allegations of the complaint and setting up the provisions of sections 337, subdivision 1, 338, subdivision 4, and 339, subdivision 1, of the Code of Civil Procedure in bar of the plaintiff's cause of action.

At the close of plaintiff's evidence defendant moved for a nonsuit, which the court did not pass upon until after defendant had produced his evidence and after the evidence of both plaintiff and defendant was all in. Thereupon the court granted the motion for a nonsuit and rendered judgment in favor of defendant. From this judgment plaintiff has appealed.

In December, 1922, the corporation commissioner issued a permit to respondent to sell a certain number of its shares of capital stock and this action grew out of a subscription by appellant for 2,000 shares of the preferred and common stock so authorized to be sold.

The contention of appellant is that he has the right to recover the money for which he sues upon two grounds: 1. Failure of consideration in that appellant failed to advance the price of units as agreed; 2. Because of the violation of the provisions of the Corporate Securities Act, which rendered the sale of the stock void. And he claims that the trial court erred in granting the motion for a nonsuit for the reason that there was substantial evidence to support his case.

H. J. Mallen & Company was the fiscal agent of respondent and was handling the sale of the said stock for respondent, and one S. L. Vance was a salesman employed by it to sell the said stock.

Plaintiff testified that Vance called at his residence, where he was confined by illness, and represented to him that the first issue of respondent's said stock was being sold at $12.50 a unit, a unit consisting of one share of preferred stock valued at $10 and one share of common stock valued at $2.50; that the said stock was selling rapidly and that the first

issue was almost exhausted and that as soon as the first issue was sold another issue would be put on sale and then the common stock would sell for $5 per share; that as a matter of fact, as appellant learned later, the permit authorizing the sale of this stock did not place any separate value on the said common stock, but authorized the sale of said stock in units at $12.50 per unit, a unit of said stock consisted of one share each of preferred and common stock. Nor did the new issue of said stock, for which a permit was granted in April, 1923, place any separate value on said common stock, nor authorize it to be sold for $5 per share nor in any other way except as a unit in conjunction with one share of said preferred stock for $12.50 per unit; that upon and after said new issue of stock the said common stock was not worth $5 per share.

The permit, under which this stock was sold to appellant, provides that the shares of stock shall be sold for cash, or upon payments of not less than twenty-five per cent in cash and the balance in not more than fifteen monthly payments; that the applicant shall agree with the purchaser of each share authorized; that no share shall be sold outside of the state of California on terms more favorable to any subscriber or purchaser thereof than the terms upon which said shares are authorized to be sold, and that a true copy of the permit shall be exhibited and delivered to each prospective purchaser before his subscription shall be taken or any sale made to him.

The evidence of appellant is to the effect that none of these requirements of the permit were complied with and that therefore, under the provisions of the Corporate Securities Act, the sale of the stock to him was void. Respondent, at the time when the subscription for stock was made, to wit, March 31, 1923, was engaged in the business of loaning money on real estate. An application for a loan of $6,250 was made to it by appellant and wife and a note dated April 4, 1923, for this amount, secured by a deed of trust and executed by appellant and wife to respondent, was placed in escrow by appellant with the Los Angeles Title and Insurance Company on April 4, 1923.

On this same date appellant and wife joined in a letter to said Los Angeles Title and Insurance Company, in which they stated: ''We have given a trust deed and a promissory note to the Lincoln Mortgage Company for $6,250. This will

be placed in escrow with you. When escrow is completed you are hereby instructed to deliver the entire amount of $6,250 direct to H. J. Mallen & Company, Inc., Merritt Building this city.'' On April 6, 1923, respondent deposited in escrow with the Los Angeles Title and Trust Company its check for $6,250. On April 13, 1923, H. J. Mallen and Company directed the escrow-holder to pay the $6,250 to S. L. Vance. On April 18, 1923, the subscription of appellant for the 2,000 shares of stock was received by respondent, together with cash amounting to $6,250, being the initial payment of twenty-five per cent on the purchase price of said stock.

While the appellant testified that the note and deed of trust were accepted by Vance in payment for the twenty-five per cent of the purchase price of said stock and that at no time had any money been paid to him, the uncontradicted evidence is to the effect that he placed the note and deed of trust in escrow with instructions to the escrow-holder to pay the $6,250 to H. J. Mallen & Company and they in turn directed payment of same to be made to Vance, and after this payment was made to Vance the subscription of appellant for the 2,000 shares of stock, with a cash payment thereon of $6,250, was deposited with respondent and accepted by it.

One of the grounds for the motion for nonsuit was that appellant was barred by limitation.

When the defendant pleads the statute of limitations a motion for a nonsuit should be granted if the evidence shows that plaintiff's cause of action is barred. (*Carter* v. *Canty,* 181 Cal. 749 [186 Pac. 346]; *Patterson* v. *Doe,* 130 Cal. 333 [62 Pac. 569]; *Bass* v. *Heuter,* 205 Cal. 284 [270 Pac. 958].)

Ordinarily an action for money had and received must be commenced within two years after the money is received. (Sec. 339, subd. 1, Code Civ. Proc.; *County of San Luis Obispo* v. *Farnum,* 108 Cal. 567 [41 Pac. 447].) The money was received by respondent between the 13th and 20th of April, 1923. This action was commenced by filing the complaint on December 6, 1927. On April 2, 1927, appellant made demand on respondent for return of said money and as ground for that demand stated that he was induced to purchase the said stock upon promises made by respondent and its agents that the price of the units would be increased to $15 per unit on the second issue and sale of the stock, but

that respondent had failed to carry out said promises. Where a demand is necessary to be made before suit can be commenced it must be made within a reasonable time, which is uniformly held to be a period coincident with that provided in the statute for barring the action. (17 Cal. Jur. 623; *Thomas* v. *Pacific Beach Co.,* 115 Cal. 136 [46 Pac. 899]; *Vickrey* v. *Maier,* 164 Cal. 384 [129 Pac. 273].)

It is admitted by appellant that within thirty days after making his subscription for the purchase of said stock he knew that the second issue of respondent's stock had not advanced the price of the common stock nor of the unit, and that respondent had not complied with its alleged promise that upon such new issue the units would be worth $15. Appellant testified that he was an attorney at law and had been practicing his profession for the past forty years. Such being the case, he must have been fully conversant with his rights relating to this transaction, and must have known that he was sleeping upon these rights when he waited four and a half years before commencing his action. In bringing this action he has proceeded upon the theory that the money sued for was received by respondent when the note was paid on December 17, 1925, but as a matter of fact the undisputed evidence is that respondent received the money through its agent, Vance, in April, 1923.

In the case of *Bannister* v. *Los Angeles Ry. Corp.,* 203 Cal. 427 [264 Pac. 756, 757], Mr. Justice Richards said: "The rule governing the power and propriety on the part of the trial judge in the matter of granting a nonsuit at the conclusion of the whole testimony in the case is clearly and correctly stated in the *Matter of Estate of Caspar,* 172 Cal. 147 [155 Pac. 631], wherein it is declared to be the rule that the right of the court to direct a verdict and the right of the court to grant a nonsuit at the conclusion of the evidence in the case are absolutely the same, and that the court may grant such a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict were given."

A review of the undisputed evidence in this case clearly shows that appellant's cause of action is barred by limitation.

The judgment is affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 24, 1931.