Filed 3/2/17

## CERTIFIED FOR PARTIAL PUBLICATION[*]

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA STATE UNIVERSITY, FRESNO ASSOCIATION, INC., | F072324 |
| Plaintiff and Respondent, | (Super. Ct. No. 12CECG03791) |
| v. | |
| COUNTY OF FRESNO, | **OPINION** |
| Defendant and Appellant; | |
| CITY OF FRESNO et al., | |
| Interveners and Appellants. | |
| CALIFORNIA STATE UNIVERSITY, FRESNO ASSOCIATION, INC., | F073149 |
| Plaintiff and Appellant, | (Super. Ct. No. 12CECG03791) |
| v. | |
| COUNTY OF FRESNO, | Fresno County |
| Defendant and Respondent; | |
| CITY OF FRESNO et al., | |
| Interveners and Respondents. | |

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, section I. of the Factual and Procedural History, sections I. and II. of the Discussion, and the Disposition are certified for publication.

APPEAL from judgments of the superior court of Fresno County.  M. Bruce Smith and Alan M. Simpson, Judges.†

Daniel C. Cederborg, County Counsel, and Peter Wall, Deputy County Counsel, for Defendant and Appellant and Defendant and Respondent County of Fresno.

Bewley, Lassleben & Miller, Leighton M. Anderson, Joseph A. Vinatieri, and Patricia Verdugo for Plaintiff and Respondent and Plaintiff and Appellant California State University, Fresno Association, Inc.

McCormick, Kabot, Jenner & Lew and Nancy A. Jenner for Intervener and Appellant and Intervener and Respondent City of Fresno.

Lozano Smith, David J. Wolfe and Jenell A. Van Bindsbergen for Intervener and Appellant and Intervener and Respondent City of Clovis.

-ooOoo-

### INTRODUCTION

County of Fresno (County) appeals from a judgment of the superior court entered on July 28, 2015, in favor of California State University, Fresno Association, Inc. (Association) in Fresno County Superior Court case No. 12CECG03791.  Association appeals from the superior court's post-judgment order issued November 17, 2015, denying its motion for attorney's fees in the same case.[1]

Association is a nonprofit public benefit corporation and auxiliary organization serving California State University, Fresno (University).  Along with administering University's dining services, residence halls, bookstore, student union, and fitness and recreation center, Association operates and maintains Save Mart Center, an estimated

---

†        Judge Smith ruled in the judgment entered July 28, 2015; Judge Simpson ruled in the post-judgment order issued November 17, 2015.

[1]        By separate order filed January 19, 2017, this court ordered the cases consolidated on its own motion.

2.

430,000-square-foot on-campus arena that hosts athletic, cultural, and entertainment events and seats up to 16,000 spectators.

In 2007, Association received property value assessments of Save Mart Center, and the related tax bills, for the period of 2003 through 2006. Association applied for reduced assessments pursuant to Revenue and Taxation Code section 1603.[2] The applications were not designated as refund claims. Following a hearing, the Fresno County Assessment Appeals Board (Board), inter alia, valued the property for the years 2004, 2005, and 2006 at amounts that were less than those set by the Fresno County Assessor (Assessor). Board mailed written notice of its decision to Association on November 4, 2010. The notice did not advise Association to file a claim for refund. Thereafter, Association paid the tax bills plus penalties.

On February 24, 2012, more than a year after Board mailed the notice, Association filed a property tax refund claim with County. County denied the claim.

On November 30, 2012, Association brought a property tax refund action against County pursuant to section 5140. County argued, inter alia, the action was barred because Association failed to file a timely refund claim pursuant to section 5097, subdivision (a)(3)(A)(i).[3, 4] Following a trial, the superior court found the one-year time

---

[2]     Unless otherwise indicated, subsequent statutory citations refer to the Revenue and Taxation Code.

[3]     "An order for a refund under this article shall not be made, except on a claim: [¶] . . . [¶] . . . Filed within one year, if an application for a reduction in an assessment or an application for equalization of an assessment has been filed pursuant to Section 1603 and the applicant does not state in the application that the application is intended to constitute a claim for a refund . . . . [¶] . . . After the county assessment appeals board makes a final determination on the application for reduction in assessment or on the application for equalization of an escape assessment of the property, and mails a written notice of its determination to the applicant and the notice does not advise the applicant to file a claim for refund." (§ 5097, subd. (a)(3)(A)(i).)

[4]     City of Fresno, City of Clovis, and City of Sanger each sought leave to intervene by ex parte application. The superior court granted the applications and complaints in

3.

limit of section 5097, subdivision (a)(3)(A)(i) did not "begin[] to run" until the date the tax was paid. Hence, it determined Association filed a timely claim, reversed Board's November 4, 2010, decision, and remanded the matter for further proceedings.

On appeal, County again asserts the superior court lacked jurisdiction to consider Association's action because Association's February 24, 2012, claim was untimely. We agree.[5]

Section 5097, subdivision (a)(3)(A)(i) sets the procedural time limit within which a party in Association's position must file a claim with County for a refund of taxes. That procedural time limit is one year. That time limit is not affected by the timing of the party's payment of the property taxes due. Since Association did not file their claim for refund of taxes with the County within the one-year time limit of section 5097, subdivision (a)(3)(A)(i), the superior court lacked jurisdiction over Association's subsequent property tax refund action against County. Accordingly, we reverse.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

**I.      County's appeal.**

Association and the Trustees of the California State University (Trustees) entered into a ground lease dated October 1, 2001, under which Association agreed to lease from Trustees certain undeveloped land on the University campus; undertake the planning, financing, construction, and operation of Save Mart Center; and convey to Trustees unencumbered title to the real property at the end of the lease term. At the time, Association was "the only vehicle for revenue bond financing for the university" and was "used as the financing vehicle to get [Save Mart Center] built." Construction began in

intervention were filed in open court. Later, City of Sanger's complaint was dismissed without prejudice.

[5]      In view of our disposition, we need not address the other arguments raised by County. (See *Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1450.) Additionally, Association's appeal of superior court's refusal to award attorney's fees is moot. (Nonpublished section III., *post*.)

December 2001 and ended on November 1, 2003. Association issued $74,475,000 in revenue bonds to pay most of the building costs.

In fiscal year 2003, Trustees approved the Systemwide Revenue Bond Program. It was through that program that the bond debt incurred to construct Save Mart Center was refinanced in early 2005. Association and Trustees entered into a facility purchase contract dated March 1, 2005, under which Trustees agreed to purchase Association's right, title, and interest in and to Save Mart Center for the amount of the outstanding bonds. Association and Trustees then entered into a ground and facility lease dated March 1, 2005, under which Association agreed to lease Save Mart Center from Trustees; occupy, operate, and maintain Save Mart Center for the benefit of University; and convey to Trustees unencumbered title to the real property at the end of the lease term.

Association received a notice of supplemental assessment dated February 5, 2007, in which Assessor appraised Save Mart Center as of November 1, 2003, the date of its completion, and established a taxable value of $64,500,000. A supplemental property tax bill charged $461,477.74. On March 27, 2007, Association filed an assessment reduction application, which was not designated as a refund claim. Association then received a notice of enrollment of escape assessments[6] dated May 31, 2007, in which Assessor retroactively appraised Save Mart Center as of the lien dates for 2004, 2005, and 2006 (see § 531) and enrolled escape assessments of $64,500,000; $65,790,000; and $67,105,800, respectively. Unsecured property tax bills charged $786,320.79 for 2004; $802,047.20 for 2005; and $818,088.14 for 2006. On June 18, 2007, Association filed three additional assessment reduction applications, one for each escape assessment. These applications were not designated as refund claims.

---

**6** When a property has either not been assessed, or has been assessed under value, an escape assessment is the mechanism which permits the correction. (§ 11315; *Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 925.)

Board conducted a bifurcated hearing on Association's applications. The first phase, scheduled for April 15 and 16, 2010, was "limited to the existence of an assessable property interest." The second phase, scheduled for July 15 and 16, 2010, "relate[d] to valuation of the subject property." Board announced its decision denying Association's applications on November 4, 2010. First, it concluded Association had a taxable interest in Save Mart Center. Second, utilizing the cost method of appraisal,[7] Board ordered the following " 'equalized' " property values, which were lower than Assessor's original figures: (1) $62,528,309.34 as of November 1, 2003; (2) $62,840,950.88 as of January 1, 2004; (3) $45,143,297.43 as of January 1, 2005; (4) $45,257,328.97 as of March 1, 2005; and (5) $43,906,188.90 as of January 1, 2006. Board mailed a written notice of its decision to Association on November 4, 2010, and a written copy of its findings of fact on December 2, 2010. The notice did not advise Association to file a refund claim.

Association paid $4,190,859.84 in taxes and penalties on May 5, 2011, and filed a property tax refund claim on February 24, 2012. County, through its auditor-controller/treasurer-tax collector, denied the claim on August 24, 2012.

On November 30, 2012, Association brought a property tax refund action against County, averring Board's use of the cost method instead of the income method[8] was legally erroneous. In an answer filed January 17, 2013, County alleged, inter alia, the action was "barred by the statute of limitations set forth in . . . section 5097, subd[ivision] (a)(3)(A)(i)" because Association's February 24, 2012, refund claim was untimely. A

---

**7** The cost method equates the fair market value of a property with "[t]he cost of replacing reproducible property with new property of similar utility, or of reproducing the property at its present site and at present price levels, less the extent to which the value has been reduced by depreciation, including both physical deterioration and obsolescence . . . ." (Cal. Code Regs., tit. 18, § 3, subd. (c).)

**8** The income method equates the fair market value of a property with "[t]he amount that investors would be willing to pay for the right to receive the income that the property would be expected to yield, with the risks attendant upon its receipt . . . ." (Cal. Code Regs., tit. 18, § 3, subd. (e).)

6.

bench trial commenced on October 7, 2014, and ended October 9, 2014. The issue of timeliness was addressed at the outset. After receiving evidence and considering counsels' arguments on the matter, the superior court sided with Association:

"I'm satisfied that . . . Association received the notice and the findings. [¶] The presumption that they were mailed is not rebutted in my mind. My hang up comes . . . with . . . [s]ection 5097. The first line, no order for a refund under this article shall be made except on a claim. Right there number one, plain meaning, verified by the person who paid the tax. If there is no tax paid, my position is, and I am sure others may differ and maybe be settled at the [c]ourt of appeal. But . . . it's my feeling and interpretation that verified by the person who paid the tax . . . means that you can't seek a refund until the tax is paid.

". . . [I]n this case, the decision and the findings of facts were prepared and sent out. I'm satisfied that everybody had them by mid-December. [¶] I'm satisfied and the record shows as demonstrated that . . . Association paid the tax and penalties on May 5th, 2011, [less than] six months thereafter. . . . And that they filed their claim for refund on February 24th, 2012.

". . . I understand the arguments. And if I'm wrong, sobeit [*sic*], but these are my findings and I will deny. I'll find for [Association] with respect to the statute of limitations. . . ."

In a statement of decision adopted July 25, 2015, the court reversed Board's November 4, 2010, decision, finding Board's application of the cost method "arbitrary, in excess of discretion, and in violation of the standards prescribed by law," inter alia. Beforehand, the statement of decision clarified the court's stance on the timeliness of Association's refund claim:

"[S]ection 5097, subdivision (a)(3)(A)(i) is the applicable statute of limitations when an applicant has filed an assessment reduction application pursuant to . . . section 1603 that does not state that the application is intended to also constitute a claim for refund, the county assessment appeals board makes a final determination on the application, and the assessment appeals board mails a written notice of its determination to the applicant that does not advise the applicant to file a claim for refund. In this case, it is undisputed that [Association] filed four assessment reduction applications pursuant to . . . section 1603, that each of the assessment

7.

reduction applications specifically stated that they were <u>not</u> also claims for refund, that . . . Board made a final determination on [Association]'s four applications, and that the written notice of its determination did not advise [Association] to file a claim for refund. . . .

"The Court finds that . . . Board mailed out a written notice of its decision on [Association]'s four assessment reduction applications on November 4, 2010[,] and mailed out a written copy of its findings of fact on December 2, 2010. Further, the Court finds that . . . Board sufficiently mailed written notice of its final determination to [Association] when it mailed written notice of its decision and written notice of its findings of fact to [Association's co-counsel]. Therefore, since all of the factual prerequisites have been met, the Court finds that the statute of limitation[s] applicable to this action is the one-year statute of limitations established in . . . section 5097, subdivision (a)(3)(A)(i).

"Consequently, [County] argues that, because [Association] did not file its claim for refund until February 2012, more than a year after . . . Board mailed written notice of its decision to [Association] on November 4, 2010[,] and mailed written notice of its findings of fact on December 2, 2010, this action for a property tax refund is barred by . . . section 5097, subdivision (a)(3)(A)(i). The Court disagrees. 'It is elementary that a statute of limitations does not begin to run until the cause of action accrues. [Citations.] Equally basic is that a cause of action does not accrue "until the party owning it is entitled to begin and prosecute an action thereon" [citation], that is, not until "the last element essential to the cause of action" occurs.' (*Spear v. California State Auto[.] Assn.* (1992) 2 Cal.4th 1035, 1040.) It is clear that the statute of limitations in . . . section 5097, subdivision (a)(3)(A)(i) establishes a number of factual conditions to accrual of the right to file a claim for refund, but the Court finds that the statute does not state that accrual occurs, and the statute of limitations begins to run, when all of the factual conditions listed in the statute are met. This is because the statute does not mention the most important condition to accrual of the right to file a refund claim – payment of the disputed taxes.

"The law is similarly clear that a claim for refund pursuant to . . . section 5097 cannot be made until after the taxes (and any penalties) have been paid. (. . . § 5097, subd. (a)(1); *JPMorgan Chase Bank, N.A. v. City and County of San Francisco*[ (2009)] 174 Cal.App.4th 1201, 1210 [(*JPMorgan*)].) Accordingly, since a refund claim cannot be properly made until after the disputed taxes are paid, the right to file a claim for refund does not accrue, and the statute of limitations in . . . section 5097, subdivision (a)(3)(A)(i) does not start running, until after all of the factual

8.

conditions listed in the statute have been met *and* the disputed taxes have been paid.  In this case, this means that, if [Association] had paid the disputed taxes before filing its assessment reduction applications, then the one-year statute of limitations would have commenced when . . .  Board mailed [Association] the final decision and findings of fact.  However, since [Association] did not pay the disputed taxes before filing the assessment reduction applications, the one-year statute of limitations did not commence until [Association] paid the disputed taxes and *all* of the conditions for accrual of the right to file a refund claim were finally met.

"[County] asserts that holding that the one-year statute of limitations does not commence until [Association] pays the disputed taxes will lead to absurd results in the future because taxpayers would be able to wait a virtually unlimited amount of time to pay their disputed taxes and then will have another year after the date of payment to file a refund claim.  The Court disagrees.  Ignoring the multitude of penalties attendant to the tardy payment of taxes, . . . ' ["]The rule is well settled that when the plaintiff's right of action depends upon some act which he has to perform preliminarily to commencing suit, and he is under no disability or restraint in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by a delay in performing such preliminary act, and that if the time within which such act is to be performed is indefinite or not specified, a reasonable time will be allowed therefor, and the statute will begin to run after the lapse of such reasonable time."  And it has been uniformly held that unless there are peculiar circumstances affecting the question, a reasonable time is a period coincident with that provided in the statute of limitations for barring the action.'  (*Bass v. Hueter* (1928) 205 Cal. 284, 287.)

"Therefore, in a case such as this one, it makes most sense that, once all of the conditions listed in . . . section 5097, subdivision (a)(3)(A)(i) were met, but the disputed taxes had not yet been paid, the accrual of a right to file a refund claim depends on the applicant paying the outstanding taxes.  Since no statute specifies the time within which an applicant must pay the disputed taxes or lose the right to file a refund claim, the Court finds that an applicant has a reasonable time of one year after the county assessment appeals board mails the applicant a written notice of its determination which does not advise the applicant to file a claim for refund because the statute of limitations established in . . . section 5097, subdivision (a)(3)(A)(i) is one year.  If the applicant pays the taxes within that year, then the statute of limitations begins to run on the date the tax is paid.  If the applicant fails to pay the taxes within that year, the statute of limitations

begins to run one year after all of the conditions listed in . . . section 5097, subdivision (a)(3)(A)(i) are met.

"In this case, all of the conditions listed in . . . section 5097, subdivision (a)(3)(A)(i) were met no later than December 2, 2010, when . . . Board mailed [Association] the written notice of its findings of fact and did not advise [Association] to file a claim for refund. However, since [Association] had not yet paid the disputed taxes, the one-year statute of limitations did not begin to run. . . . [Association] paid the disputed taxes on May 5, 2011, less than a year after all of the conditions listed in . . . section 5097, subdivision (a)(3)(A)(i) were met and within the one year of reasonable time. Hence, the one-year statute of limitations established in . . . section 5097, subdivision (a)(3)(A)(i) began to run May 5, 2011. Since [Association] filed a claim for refund on February 24, 2012, less than a year later, the Court finds that [Association] timely filed its claim for refund with [County] and that this action is not barred by the one-year statute of limitations set forth in . . . section 5097, subdivision (a)(3)(A)(i)."

## II. Association's appeal.[*]

On October 14, 2015, Association moved for an award of $406,176 in attorney's fees pursuant to section 1611.6.[9] County filed an opposition on November 3, 2015, and Association filed a reply on November 9, 2015. In a tentative ruling issued on November 16, 2015, the superior court denied Association's motion. After hearing oral arguments on November 17, 2015, the court confirmed its tentative ruling.

---

[*]     See footnote, *ante*, page 1.

[9]     This provision reads:

"If the county board fails to make findings upon request, or if findings made are found by a reviewing court to be so deficient that a remand to the county board is ordered to secure reasonable compliance with the elements of findings required by Section 1611.5, the action of the county board shall be deemed to be arbitrary and capricious within the meaning of Section 800 of the Government Code, so as to support an allowance of reasonable attorney's fees against the county for the services necessary to obtain proper findings. The dollar limitation set forth in Section 800 of the Government Code shall not apply to an allowance of attorney's fees pursuant to this section."

**DISCUSSION**

**I.      The procedural time limit in section 5097, subdivision (a)(3)(A)(i), within which Association's claim for refund of property taxes must be filed, is not affected by the date the disputed taxes are paid.**

It is clear that property taxes must be paid before litigation challenging them can occur. "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32; see *Water Replenishment Dist. of Southern California v. City of Cerritos* (2013) 220 Cal.App.4th 1450, 1466-1468; *Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1136-1137 [Cal. Const., art. XIII, § 32 applies equally to state and local taxes as a matter of public policy].) This constitutional provision, known as the "pay first, litigate later" doctrine (see, e.g., *Water Replenishment Dist. of Southern California v. City of Cerritos*, *supra*, at p. 1454), "establish[es] that the sole legal avenue for resolving tax disputes is a postpayment refund action" (*State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638 (*SBE*)). In other words, "[a] taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid." (*SBE*, *supra*, at p. 638.)

"The important public policy behind [the "pay first, litigate later" doctrine] 'is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.' [Citation.]" (*SBE*, *supra*, 39 Cal.3d at p. 638.) The California Supreme Court noted in an earlier decision:

> " 'The fear that persistent interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions. [Citation.] As was said by Mr. Justice Field in *Dows v. City of Chicago*, 11 Wall. (78 U.S.) 108, 110, "Any delay in the proceedings of the officer, upon whom the duty is devolved of collecting the taxes, may derange the operations of

11.

government, and thereby cause serious detriment to the public." '
[Citation.]

> " ' "The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason." [Citations.]' [Citation.]" (*SBE, supra*, 39 Cal.3d at pp. 638-639.)

Furthermore, the "pay first, litigate later" doctrine "rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues." (*Woosley v. State of California* (1992) 3 Cal.4th 758, 789; see *Farrar v. Franchise Tax Bd.* (1993) 15 Cal.App.4th 10, 20-21 ["The lesson of *Woosley* we take [is] that statutes governing administrative tax refund procedures, backed as they are by a plenary constitutional authority, are to be strictly enforced." fn. omitted].)

Section 4807 also provides, in part:

> "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected."

This "statutory bar to orders enjoining the collection of a county tax . . . is comparable to the constitutional prohibition against enjoining the collection of a state-imposed tax." (*Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1114, citing Cal. Const., art. XIII, § 32.) "The language used in [section 4807 and California Constitution, article XIII, section 32] is nearly identical, and the policy behind both of them is the same: to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." (*Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 400; accord, *William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 11.)

Association is incorrect, however, in its position that the claim filing deadline in this case did not begin to run until after payment of the taxes sought to be refunded.

"[T]he Legislature has statutorily established a three-step process for handling challenges to property tax assessments and refund requests.  The first step is the filing of an application for assessment reduction under section 1603, subdivision (a)[10] . . . .  The second step, which occurs after payment of the tax, is the filing of an administrative refund claim under section 5097, subdivision (a) . . . .  The third and final step in the process is the filing of an action in superior court pursuant to section 5140[11] . . . ."  (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1307.)

Section 5097 is one of the claims procedures prescribed by the Legislature "for presentation, consideration, and enforcement of claims against counties, cities, their officers, agents, or employees."  (Cal. Const., art. XI, § 12; accord, *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 627 (*McWilliams*).)  Prior to its 2014 amendment, which took effect on January 1, 2015 (see Stats. 2014, ch. 656, § 3), section 5097, subdivision (a) provided, in pertinent part:

> "No order for a refund under this article shall be made, except on a claim:
>
> "(1) Verified by the person who paid the tax, his or her guardian, executor, or administrator.

---

**10**  Section 1603, subdivision (a) reads, in pertinent part:

"A reduction in an assessment on the local roll shall not be made unless the party affected or his or her agent makes and files with the county board a verified, written application showing the facts claimed to require the reduction and the applicant's opinion of the full value of the property."

**11**  Section 5140 reads, in pertinent part:

"The person who paid the tax, his or her guardian or conservator, the executor of his or her will, or the administrator of his or her estate may bring an action only in the superior court, but not in the small claims division of the superior court, against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim pursuant to Article 1 (commencing with Section 5096) of this chapter."

"(2) Except as provided in paragraph (3), filed within four years after making the payment sought to be refunded, or within one year after the mailing of notice as prescribed in Section 2635, or the period agreed to as provided in Section 532.1, or within 60 days of the date of the notice prescribed by subdivision (a) of Section 4836, whichever is later.

"(3)(A) Filed within one year, if an application for a reduction in an assessment or an application for equalization of an assessment has been filed pursuant to Section 1603 and the applicant does not state in the application that the application is intended to constitute a claim for a refund, of . . . the following event[] . . . [¶] (i) After the county assessment appeals board makes a final determination on the application for reduction in assessment or on the application for equalization of an escape assessment of the property, and mails a written notice of its determination to the applicant and the notice does not advise the applicant to file a claim for refund."[12, 13]

"The timely filing of a proper claim for refund is a statutory prerequisite to a refund action" (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 34 (*Plaza Hollister*); accord, *JPMorgan*, *supra*, 174 Cal.App.4th at p. 1210): "No action shall be commenced or maintained . . . unless a claim for refund has first been filed" (§ 5142, subd. (a)). "Statutorily prescribed prerequisites to statutory causes of action have been held jurisdictional and the failure to satisfy such preconditions has been held fatal to the action." (*Plaza Hollister*, *supra*, at p. 35; see, e.g., *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737-738; *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454 [Gov. Code §§ 905 & 945.4 mandate timely filing of a proper claim as a condition precedent to the maintenance of an action for damages against local public entities and failure to do so bars the action].)

---

**12** The 2014 amendment made no substantive changes to the portions of the statute at issue here.

**13** A refund claim must be both (1) verified by the person who paid the tax (§ 5097, subd. (a)(1)); and (2) filed in a timely manner (See *id.*, subd. (a)(2)-(3).) One can logically and immediately infer from the first criterion that one must pay the challenged property taxes before he or she can verify a claim for a refund. (See Black's Law Dict. (9th ed. 2009) p. 1394 ["refund" means either "[t]he return of money to a person who overpaid" or "[t]he money returned to a person who overpaid"].)

On appeal, the parties do not contest the following facts:  (1) Association filed assessment reduction applications on March 27 and June 18, 2007; (2) Association did not designate these applications as refund claims; (3) Board made its final determination on the applications and mailed written notice of this determination to Association on November 4, 2010; (4) this notice did not advise Association to file a refund claim; (5) Association paid the outstanding taxes and penalties on May 5, 2011; and (6) Association filed a refund claim on February 24, 2012.  Section 5097, subdivision (a)(3)(A)(i) is, therefore, the governing provision.

The issue before us is, therefore, one of statutory interpretation.  "Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo."  (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604, citing *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.)  "Because the interpretation and application of a statute are questions of law, an appellate court is not bound by the trial judge's interpretation."  (*Haworth v. Lira* (1991) 232 Cal.App.3d 1362, 1367.)  Instead, "we undertake our own interpretation of the determinative statute and assess any claims raised by the parties completely anew." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

"In ascertaining the meaning of a statute, we look to the intent of the Legislature as expressed by the actual words of the statute" (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1117), "giving them a plain and commonsense meaning" (*County of Fresno v. Malaga County Water Dist.* (2002) 100 Cal.App.4th 937, 941).  "We examine the language first, as it is the language of the statute itself that has 'successfully braved the legislative gauntlet.'  [Citation.]  'It is that [statutory] language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed "into law" by the Governor.  The same care

15.

and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's "legislative history." ' [Citation.]" (*Wasatch Property Management v. Degrate*, *supra*, at pp. 1117-1118.)

"If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.) "When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it." (*Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 716; see *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 476 [" ' " 'An intent that finds no expression in the words of the statute cannot be found to exist.' " ' "].) "We will not speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent." (*Morton Engineering & Construction, Inc. v. Patscheck*, *supra*, at p. 716; accord, Code Civ. Proc., § 1858; *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73-74.) "The plain meaning of words in a statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason . . . .' [Citation.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.)

Examining the language of section 5097, subdivision (a)(3)(A)(i), it is clear that a refund claim must be filed within one year after the county assessment appeals board makes a final determination on the assessment reduction application and mails a written notice of the determination to the applicant. Association's position, that the one-year period does not begin to run until after payment of the disputed taxes, is inconsistent with the unequivocal statutory language.

The sole reference to a deadline that is triggered by a claimant's tax payment is in section 5097, subdivision (a)(2), which is not the governing provision in this case. Under subdivision (a)(2), the time limit may be "four years after making the payment sought to be refunded" if, out of four possible choices, this presents the longest period. The

16.

preceding prepositional phrase "[e]xcept as provided in paragraph (3)" establishes this payment-induced deadline is exclusive to subdivision (a)(2).[14]  (See *Surfrider Foundation v. California Regional Water Quality Control Bd.* (2012) 211 Cal.App.4th 557, 576 [" '[W]e must "interpret a statute consistently with the meaning derived from its grammatical structure." ' "].)

Furthermore, subdivision (a)(3)(A)(i) of section 5097, which expressly omits the "after making the payment sought to be refunded" phrase, contains no language indicating its one-year clock begins on the date of the tax payment.  "[W]hen different words are used in contemporaneously enacted, adjoining sub[paragraphs] of a statute, the inference is compelling that a difference in meaning was intended.  And we are required to ascribe significance to every word of each statute we are called upon to apply." (*People v. Jones* (1988) 46 Cal.3d 585, 596, italics omitted; accord, *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 343; see *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning."]; *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 507 [" ' "It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." ' "].)  If

---

**14**    Association cites several cases for the proposition that "cases arising under [section] 5097 have referred to that statute as creating a 'limitations period,' measured from the date of payment of the disputed taxes."  (See *JPMorgan*, *supra*, 174 Cal.App.4th at p. 1210; *Hanjin Internat. Corp. v. Los Angeles County Metropolitan Transportation Authority* (2003) 110 Cal.App.4th 1109, 1112; *Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 34; *Mission Housing Development Co. v. City and County of San Francisco* (1997) 59 Cal.App.4th 55, 66.)  These cases, however, only deal with subdivision (a)(2) of section 5097.

the Legislature had intended for the clock to start after the claimant makes his or her payment, it would have said so.**15**

Association argues for the conflation of paragraphs (2) and (3) by asserting: "The better reading of section 5097[, subdivision ](a)(2)-(3) is that the provision of subsection (2) which refers to subsection (3) ('[e]xcept as provided in paragraph (3)') was intended to incorporate the additional or alternate time periods of that subsection, but not to override the phrase 'whichever is later,' at the end of subsection (2)." "We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349; accord, *Powers Farms v. Consolidated Irr. Dist.* (1941) 19 Cal.2d 123, 130 ["The long established rule in this state is that the courts may allow no exceptions to the plain provisions of a claim statute under the guise of interpretation or construction."].) " 'Where [the Legislature] has manifested its intention, [courts] may not manufacture ambiguity in order to defeat that intent.' [Citation.]" (*People v. Reid* (2016) 246 Cal.App.4th 822, 830.)

Next, Association invites us to examine the legislative history. We decline. "[W]hen statutory language is clear and unambiguous, resort to the legislative history is unwarranted." (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1264; accord, *People v. Maultsby* (2012) 53 Cal.4th 296, 300, fn. 3; *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347.)

---

**15** Likewise, if the Legislature had intended for the clock to start after the accrual of the cause of action, it would have said so. (Cf. Gov. Code, § 911.2, subdivision (a) ["A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."].)

## II. Section 5097, subdivision (a) is not subject to equitable tolling.

Association argues that it "at all times acted reasonably and in good faith in the pursuit of its dispute" with Assessor and so equitable tolling should preclude the forfeiture of its right to seek a property tax refund.

"Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 (*Lantzy*).)  Association contends the claim filing deadline set forth in subdivision (a)(3)(A)(i) of section 5097 can be equitably tolled.  Section 5097, subdivision (a), however, is not subject to the doctrine because it is not a statute of limitations.

" 'A statute of limitations is a statute that fixes the latest time within which an action may be brought.' [Citation.]" (*Utah Property & Casualty Ins. etc. Assn. v. United Services Auto. Assn.* (1991) 230 Cal.App.3d 1010, 1025 (*Utah Property*); accord, *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.)  "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22; see *Thompson v. Miller* (2003) 112 Cal.App.4th 327, 336-337 [" 'An "action" is "a lawsuit brought in a court . . . ." ' "]; *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 ["An action is not limited to the complaint but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with 'suit.' "].)  "As a rule, where the Legislature intends to bar the bringing of suits beyond a certain date, it does so explicitly by employing either the term 'statute of limitations' (e.g., Code Civ. Proc., §§ 312-363) or some equally unambiguous formula (e.g., 'The action may be brought within three years from the date that payment was made hereunder' ([Ins. Code, ] § 11580.2, subd. (g))." (*Utah Property*, *supra*, 230 Cal.App.3d at p. 1025.)

19.

Because statutes of limitations "fix the time for commencing suit" (*Life Savings Bank v. Wilhelm* (2000) 84 Cal.App.4th 174, 177), they "are distinguished from procedural limits governing the time in which parties must do an act" (*ibid.*).  (Accord, 43 Cal.Jur.3d (2011) Limitation of Actions, § 1, pp. 16-17 ["Because they fix the time for commencing suit, statutes of limitations are distinguished from procedural limits governing the time in which parties must do an act. . . .  [E]xamples are statutes requiring certain things to be done within a prescribed time as a condition precedent to the right to recover in a subsequently commenced action, such as the filing of a claim against an estate or a governmental agency." fns. omitted]; Turner & Banke, Cal. Practice Guide: Civil Procedure Before Trial Statutes of Limitations (The Rutter Group 2016) ¶ 1:50 ["Many causes of action require that plaintiff make a timely demand on the defendant or give other notice of the claim *before* filing suit.  Generally, these are not statutes of limitations.  Rather, they are *essential elements of the claim itself*, and thus prerequisites to suit."]; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 445, p. 566 ["Statutes of limitation, which fix the time for commencing actions, are to be distinguished from other procedural statutes fixing time to do acts . . . , e.g.:  [¶]  . . .  [s]tatutes fixing the time to give notice of a claim as a condition precedent to suit."].)

Section 5097, subdivision (a) "is not a statute of limitations because it does not look like a statute of limitations, walk like a statute of limitations, or talk like a statute of limitations.  It does not speak to the time for bringing actions."[16]  (*Utah Property*, *supra*, 230 Cal.App.3d at pp. 1025-1026.)  Again, section 5097, subdivision (a) is a claims procedure (*McWilliams*, *supra*, 56 Cal.4th at p. 627), "a precondition to the court's

_____

**16**     The statute of limitations for bringing a property tax refund action is section 5141, subdivision (a):  "An action . . . shall be commenced within six months from and after the date that the board of supervisors or city council rejects a claim for refund in whole or in part."  (Accord, *Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 772, 774.)

20.

exercise of jurisdiction" (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 35) that is "strictly enforced" (*Farrar v. Franchise Tax Bd.*, *supra*, 15 Cal.App.4th at p. 21).

Even assuming arguendo section 5097, subdivision (a) somehow constitutes a statute of limitations, " '[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute.' [Citation.]" (*FNB Mortgage Corp. v. Pacific General Group* (1999) 76 Cal.App.4th 1116, 1133.) We agree with the reasoning of *JP Morgan*:

> "It is doubtful that state courts may apply the judicially created doctrine of equitable tolling to alter state tax refund procedures established by the Legislature pursuant to its constitutional grant of power. [Citations.] ' "[S]trict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues." ' [Citation.]
>
> " 'Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied "equitable tolling" exception' [citation], but '[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute' [citation]. In *Lantzy*[, *supra*,] 31 Cal.4th [at p.] 371, our state Supreme Court rejected the plaintiff's argument that equitable tolling could extend the limitations period for suits based on latent construction defects under Code of Civil Procedure section 337.15, subdivision (a), which provides, "*No action may be brought* . . . more than 10 years after the substantial completion of the development or improvement . . . .' (Italics added.) The court concluded that this 'stentorian' language, combined with the statute's inclusion of several express exemptions to the limitations period and its stated purpose of protecting contractors from perpetual exposure to lawsuits, demonstrated that equitable tolling would not extend the limitations period for reasons not stated in the statute itself. (*Lantzy*, *supra*, at pp. 373-374.) Similarly, section 5097, subdivision (a) provides, 'No order for a refund under this article shall me made . . .' except upon the timely filing of a refund claim, and section 5142, subdivision (a) provides, 'No action shall be commenced . . .' unless a claim for refund has been filed pursuant to section 5097. This language, similar to that in the statute considered in *Lantzy*, signifies an intent to restrict the doctrine of equitable tolling, which is consistent with the Legislature's plenary control over tax refunds and the necessity of strict compliance with the administrative refund procedures. [Citation.]" (*JPMorgan*, *supra*, 174 Cal.App.4th at pp. 1213-1214; accord, *Bjorndal v. Superior Court* (2012) 211 Cal.App.4th 1100, 1111-1113.)

To meet the procedural time limit of section 5097, subdivision (a)(3)(A)(i), Association needed to file its refund claim within one year after Board made its final determination on its application for reduction in assessment and mailed a written notice of its determination. It did not. Association failed to meet the statutory prerequisite. The jurisdictional prerequisite having not been met, the superior court lacked power to grant relief.

### III. Association's appeal challenging the superior court's refusal to award attorney's fees is moot.<sup>*</sup>

Generally, "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) "The costs to which a prevailing party are entitled include attorney's fees authorized by statute." (*Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402; accord, Code Civ. Proc., § 1033.5, subd. (a)(10)(B).)

Since we have determined the superior court lacked jurisdiction to consider Association's property tax refund action, Association no longer is a prevailing party entitled to recover attorney fees. (See *Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1206; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1056.) Therefore, Association's appeal challenging the court's refusal to award attorney fees is moot. (See *Costa Serena Owners Coalition v. Costa Serena Architectural Com.*, *supra*, at p. 1206.) "It is well settled that an appellate court will decide only actual controversies." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10.)

### DISPOSITION

The judgment regarding the Board's November 4, 2010, decision is reversed. Association's appeal of the judgment regarding attorney fees is dismissed. The case is

---

<sup>*</sup>     See footnote, *ante*, page 1.

22.

remanded with directions to the superior court to dismiss the action.  Costs on appeal are awarded to County.

_____

DETJEN, J.

WE CONCUR:


_____

KANE, Acting P.J.


_____

FRANSON, J.