Filed 5/26/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RAJI RAB,<br><br>     Plaintiff and Appellant,<br><br>  v.<br><br>SHIRLEY N. WEBER, as Secretary of State, etc., et al.,<br><br>     Defendants and Respondents. | C093916<br><br>(Super. Ct. No. 34-2020-80003363-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Laurie M. Earl, Judge.  Affirmed.

Raji Rab, in pro. per., for Plaintiff and Appellant.

Collins + Collins, Brian K. Stewart and Taylor J. Pohle for Defendants and Respondents County of Los Angeles, Los Angeles County Board of Supervisors and Dean C. Logan.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Paul Stein and S. Clinton Woods, Deputy Attorneys General, for Defendant and Respondent California Secretary of State.

At the time of the March 2020 primary election, Elections Code section 15101, subdivision (b), stated, "[a]ny jurisdiction having the necessary computer capability may start to process vote by mail ballots on the 10th business day before the election. Processing vote by mail ballots includes . . . machine reading them, . . . but under no circumstances may a vote count be accessed or released until 8 p.m. on the day of the election." (Elec. Code, § 15101, subd. (b) (Mar. 3, 2020; see also Stats. 2018, ch. 282, § 1.)

Elections Code section 15101 has been amended three times since the March 2020 primary election. (See Stats. 2020, ch. 4, § 6; Stats. 2020, ch. 106, § 4; Stats 2021, ch. 312, § 7.) As of November 1, 2022, subdivision (b) says, "(b) Any jurisdiction having the necessary computer capability may start to process vote by mail ballots on the 29th day before the election. Processing vote by mail ballots includes opening vote by mail ballot return envelopes, removing ballots, duplicating any damaged ballots, and preparing the ballots to be machine read, or machine reading them, including processing write-in votes so that they can be tallied by the machine, but under no circumstances may a vote count be accessed or released until 8 p.m. on the day of the election. All other jurisdictions shall start to process vote by mail ballots at 5 p.m. on the day before the election." (Elec. Code, § 15101, subd. (b) (2022).) Our holding that "machine reading" includes "scanning" applies with equal force to the version of the law in effect as of November 1, 2022.

All further citations to Elections Code section 15101 in this decision are referring to the version that existed on March 3, 2020.

Petitioner Raji Rab contends that by allowing Los Angeles County workers to scan vote by mail ballots into the Voting Solutions for All People (VSAP) system—the computer hardware and software system used to capture and count votes in Los Angeles

County—beginning 10 days before the March 2020 primary election, Dean Logan, the Los Angeles County Registrar-Recorder/County Clerk violated Elections Code section 15101, subdivision (b)'s, prohibition on accessing and releasing a vote count prior to 8 p.m. on the day of an election. Rab alleges respondents the Los Angeles Board of Supervisors and its members (with Logan, the County) and the California Secretary of State, failed in their oversight of Logan, and, therefore, failed to protect the election process and aided and abetted in Logan's alleged misconduct.

Rab brought a petition for writ of mandate, seeking a manual recount of ballots from the March 2020 primary election, and claiming this matter was one "of [the] greatest public interest." The trial court denied his petition. Specifically, in denying the petition, the trial court wrote, "[t]he Court interprets 'machine reading' to include, and thus to permit, scanning ballots. To leave no room for confusion in the future, the Court reiterates: Elections Code section 15101(b) allows the County to start scanning ballots on the 10th business day before the election."

Rab now appeals, arguing the trial court misinterpreted Elections Code section 15101, subdivision (b); that the trial court erred in finding there was no evidence to support his claims; and that the trial court's rulings regarding discovery motions related to his demands to inspect the Downey Tally Operation Center (Tally Center) demonstrate the trial court was biased and prejudiced and discriminated against him. We hold the trial court interpreted Elections Code section 15101, subdivision (b), correctly: machine reading includes scanning. We also find that evidence does not support Rab's position; and that the trial court exhibited no bias and prejudice against Rab. Accordingly, we affirm.

FACTS AND HISTORY OF THE PROCEEDINGS

Rab was a candidate for the U.S. House of Representatives, 30th Congressional District, in California's primary election held on March 3, 2020. Including Rab, there

were five candidates listed on the ballot.  Under article II, section 5, subdivision (a), of the California Constitution, in primary elections for congressional offices, all voters may vote for any candidate, without regard to the political party preference of either the candidates or the voter.  The candidates who receive the two highest numbers of votes will then compete in the general election, regardless of party preference.  (Cal. Const., art. II, § 5, subd. (a).)  Rab, having received 7,961 votes, which was 4.7 percent of the vote for the district, finished fourth in the primary.  The candidates who placed first, second, and third received 99,282 votes representing 58.1 percent of the vote, 38,778 votes representing 22.7 percent of the vote, and 18,937 votes representing 11.1 percent of the vote, respectively.

Rab filed a petition for writ of mandate on April 8, 2020.  The operative pleading in this action is the Verified Second Amended Petition for Writ of Mandate or Other Extraordinary Relief (petition) that Rab filed on September 23, 2020.

In the petition, Rab alleges that respondents violated Elections Code section 15101, subdivision (b), when Logan caused to be "scanned and accessed Vote-By-Mail" ballots "10 days before 8 pm election day.  Once the ballot count became accessible, it was easily accessed with a password; and Petitioner's votes given to his opponent, robbing Petitioner of his victory."  He also alleged the election results were the result of "malconduct" under Elections Code, section 16100, subdivisions (a) and (g).

According to the petition, on the day of the primary election, Rab was on his way to go observe vote tallying, when he heard a news report that the *New York Times* had already called the election in favor of one of his opponents.  Rab believed this report was evidence that election misconduct was afoot.  Rab said that once he arrived at the Tally Center the division manager informed him that the office had begun scanning vote by mail ballots into VSAP 10 days before the election.  According to Rab, the division manager informed Rab that he did not have the password to look at the vote count, which

4

Rab took as "a clear admission of vote count done 10 days before 8 pm election day . . . ."

Relying on a diagram he obtained during discovery prior to filing the second amended petition, Rab alleged that under the VSAP Tally System (Tally System) used by the County, "[b]allot images were scanned, voter intent was decoded, voter intent was recognized and transformed into cast vote record instantly by the Tally [S]ystem, making vote count accessible. Respondent Logan thereby accessed the ballot count, tampered with the results and summation of the ballot count, took a majority of Petitioner's votes, and allocated them to Petitioner's opponents, thus robbing Petitioner of his rightful victory."

According to the petition, Logan certified the results of the election on March 27, 2020, and the Secretary certified the count on May 1, 2020.

Rab attached 26 exhibits to his verified petition. He also submitted a declaration in support of the petition. In supporting his arguments on appeal, Rab focuses on declarations made by his purported experts and diagrams regarding how VSAP works. As such, we will focus on evidence regarding the workings of the VSAP system in this decision.

Furthermore, as the trial court correctly concluded, most of the exhibits attached to the petition are not relevant to the issues raised in the petition, because "they do not 'hav[e] any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' (Evid. Code[,] § 210.)" In a footnote to its decision, the trial court identified 10 examples—i.e., not an exhaustive list—of exhibits submitted with the petition that it deemed not relevant. Rab does not make an argument that the trial court's determination as to the relevance of these exhibits was incorrect in either his statement of issues, or under a separate argument heading. Nor does his brief contain any analysis of Evidence Code provisions defining relevant evidence. Thus, we assume he does not take issue with the trial court's determination as

5

to the items of evidence it explicitly found not relevant. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [a brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].)

Because the County's evidence provides the most complete explanation of how VSAP works, we begin our description of the evidence submitted below by describing the County's evidence.

With their opposition to the petition, the County respondents submitted the Declaration of Aman Bhullar, assistant Registrar-Recorder/County Clerk of the Information Technology Bureau of the County of Los Angeles. He is responsible for the configuration of election management and tally systems in Los Angeles County. He described VSAP. VSAP consists of both software and hardware components that enable voters to cast their votes by mail or in person. One component of VSAP is VSAP Tally Version 2.0, the Tally System, a hardware and software component that processes and tallies votes.

The Tally System uses industry grade scanners to scan vote by mail and other paper ballots. When a ballot is scanned, a digital .jpeg image is created. Tally then processes the digital image to create a cast vote record (CVR). CVRs reflect the selections a voter made on the scanned ballot. CVRs can then be put into a format that enables the Tally System to access the selections made by voters to generate a vote count. Scanning and tabulation do not occur simultaneously. While the County might scan and upload .jpeg images into the Tally System before election day, tabulation of votes does not occur until after 8 p.m. on the day of an election, when personnel execute a command in the Tally system software that resides on equipment other than the scanners. Bhullar expressly stated, "[n]o tabulation begins before 8 p.m. on the evening of any election night."

6

Logan submitted a declaration that also described the workings of VSAP and the Tally System. He added that during the March 2020 primary election, authorized Registrar-Recorder/County Clerk personnel would process vote by mail ballots by opening their return envelopes, removing the ballots from the envelopes, duplicating damages ballots, preparing ballots to be read by scanners, then inserting the ballots into the scanners to be machine read. He stated staff began scanning ballots for the March 3, 2020, election on February 25, 2020, and he attached logs reflecting the same to his declaration. He too stated that ballots are not counted until after 8 p.m. on the night of an election. He further stated that no one with the Registrar-Recorder/County Clerk's office executed a command in the Tally System software to count the ballots until after 8 p.m. on election night during the March 2020 primary election.

Rab submitted a declaration of Andy Rodriguez in support of the petition. According to Rodriguez, he was with Rab at the Downey Center on election day, and he heard the division manager tell Rab that the center began scanning vote by mail ballots 10 days in advance of election day. He believed this violated Elections Code section 15101, since "the scanner and tabulation machines" used by the County "are two in one." He claims another employee confirmed the machines are "two in one scanner and tabulation machines."

Rab included a page of the operations manual for VSAP that describes the Tally System. According to the description, Tally is a "central tabulator" used for "ballot processing, vote tabulation, and reporting."

Rab submitted a declaration of Todd Matthew Woods in support of the petition. Woods claims to be an experienced poll watcher. He expressed great concern upon learning that Los Angeles County pre-scanned "all of their ballots" before the march 2020 primary election using the "same machine" (all caps removed) that tabulates the votes.

Rab submitted declarations of Ali Razeghi and Syed Y. Raza, computer scientists who purported to have expert knowledge in the field of database systems. Razeghi and Raza reviewed various documents produced in discovery related to the operations of VSAP. Relying on a diagram of how data is entered into and flows through the Tally System, they both noted, consistent with Bhullar's declaration for the County, that the Tally System "scans and creates images of ballots, converts the images into Cast Vote Records (CVRs), tabulates them, and allows elections results to be exported." They identified the Tally System as having "four main . . . processes: (1) Ballots are scanned and images captured; (2) ballot images are converted into Cast Vote Records (CVRs); (3) CVRs are tabulated; and (4) Tabulated results are exported for reporting and auditing." According to Razeghi and Raza, based on their review, "it is clear that Cast Vote Records were easily accessible, and the database was accessible" once ballots were scanned. They said they found areas in which a privileged user—someone with a password— might be able to access the system and change results. Razeghi stated that there were "several areas in the Tally environment [that are] accessible to a privilege[d] user and the vote count became accessible when the scanning and tally process was started 10 days before the March 3, 2020 primary election . . . ." Raza similarly found that CVRs were accessible 10 days before the March 3, 2020, election.

On July 7, 2020, Rab served the County with a demand for inspection of premises and things, which included a demand to inspect the County Registrar/County Clerk's facilities, and 28 separate requests for categories of documents and things. Specifically, the demand sought entry to the Tally Center on August 13, 2020. Counsel for the County served Rab with objections to the demands on August 11, 2020. According to the County's counsel, Rab abandoned his request for inspection without seeking further court intervention following August 11, 2020. Based on copies of correspondence between Rab and counsel for the County that Rab attached to a declaration he filed in opposition to the County's motion for a protective order, it appears that between August 11, 2020,

and August 26, 2020, Rab and the County disagreed about the protocol and scope of a potential inspection of the Tally Center, and communications regarding the possible inspection ended on August 26, 2020.  In the written communications provided, the only "extension" discussed was Rab purportedly extending the deadline upon which an inspection could occur to August 26, 2020.  Notably, as the trial court observed there was "no agreement to extend the time for a motion to compel in the parties' voluminous email exchange."

Based on the record, Rab appears to have remained silent regarding an inspection of the Tally Center between August 26, 2020, and November 20, 2020, when he sent counsel for the County a letter via email labeled "Meet and Confer."  In the letter, "Pursuant to California Code of Civil Procedure section 2031.010 (d)," Rab requested that the County allow him to enter the Tally Center and that it produce documents and things for inspection.  The letter stated inspection of the premises and production would be at 9:00 a.m. on November 27, 2020, and requested that the County select an alternate date for inspection during the week of November 30, 2020, if unable to confirm the November 27, 2020, inspection date and time.

On November 25, 2020, Counsel for the County responded the Tally Center would not be available for an inspection on November 27, 2020, but that the County would be willing to work with Rab to arrange an inspection, provided he agreed to an inspection protocol as outlined in the response letter.  In the November 25, 2020, letter, counsel for the County advised Rab that under Code of Civil Procedure section 2031.030, subdivision (c), Rab's time in which to bring a motion to compel on the July 7, 2020, demand had long-since expired and, as such, the County considered the letter a new demand for inspection under Code of Civil Procedure, section 2031.010, et seq.  Rab and the County then engaged in back-and-forth letters and emails regarding when and under which terms an inspection might occur, and they never came to an agreement.

9

On December 11, 2020, the County filed a motion for protective order, seeking an order from the trial court that it need not make the Tally Center available to Rab for an inspection. A declaration by counsel for the County accompanied the motion for a protective order, attached to which were copies of counsel's correspondence with Rab regarding a possible inspection, beginning with Rab's November 20, 2020, letter asking for an inspection, including counsel's response that it was treating the November 20, 2020, letter like a new inspection demand, and ending with counsel's December 7, 2020, letter to Rab stating the County would allow inspection of the Tally Center of December 9, 2020, if Rab would sign an agreement to abide by specified inspection protocols. On December 14, 2020, Rab submitted a request for an order shortening time in which to bring a motion to compel compliance with his inspection demand. The trial court issued an order agreeing to hear the motion to compel on shortened time, and scheduled the hearing for the same day it was scheduled to hear the motion on the protective order.

In the tentative ruling issued before the hearing on the motions, the trial court correctly stated that it was unclear based on his moving papers whether Rab was seeking to compel further responses to his July 7, 2020, demand, as opposed to his November 20, 2020, letter and/or related communications.

At the hearing regarding the motions, Rab took the position that the letters from November and December 2020 did not contain new inspection demands, and that the emails were simply meet and confer emails that served as a "follow-up" to the parties' communications in August 2020. He argued that motions for protective orders need to be made promptly and to be accompanied by meet and confer declarations under Code of Civil Procedure, section 2016.040, and that the County did not meet and confer regarding a protective order. He argued the motion for protective order was not prompt, assuming the underlying demand at issue was the July 7, 2020, demand.

10

Additionally, when the court asked Rab to clarify if the request at issue was a new request, or if the issues raised by the motions were tied to the earlier request, he responded the issues were tied to the earlier request, and he argued there was no demand in November.  In contrast, the County stated it was treating the November 20, 2020, letter as a new inspection demand.

Following the hearing, the trial court issued a careful and detailed order granting the protective order and denying the motion to compel.  In so doing, the trial court correctly observed that Code of Civil Procedure section 2031.310, subdivision (c), requires a party to bring a motion to compel compliance with an inspection demand within "45 days of the service of the verified response, or any supplemental verified response, or on or before any specified later date to which the demanding party and the responding party have agreed in writing," and if the demanding party fails to satisfy this requirement, it "waives any right to compel a further response to the demand."  Even adding five days to serve a motion to account for service of the County's objections by mail, and taking into account that the parties never agreed in writing to extend the deadline, Rab only had until the end of September 2020 to file a motion to compel on the July 7, 2020, request, which he did not do.

With respect to Rab's motion to compel, the trial court noted that at the hearing Rab had clarified the only inspection demand he believed to be at issue was the July 7, 2020, demand.  Then, the trial court denied the motion to compel, finding that because he did not file the motion within 45 days of the County's response to his July 7, 2020, demand for inspection, he had waived any right to compel a further response pursuant to Code of Civil Procedure, section 2031.310.  In denying the motion to compel, the court observed it found nothing in the parties' communications regarding Rab's demand for an inspection that demonstrated they had entered into a written agreement that extended the time for him to bring a motion to compel a response to that demand.

11

The court did not rest its analysis regarding the motion to compel on a discussion of the July 7, 2020, demand. First, it noted sections of the moving papers where the language suggested that the focus of Rab's motion may have been letters he sent on November 30 and December 5, 2020, in which he first presented his own proposed inspection protocol for the Tally Center to the County, stating, "[g]iven Rab's moving papers, it certainly appears that he seeks an order compelling [the County] to comply with his Inspection Protocol." To the extent Rab's motion could have been deemed a motion to compel compliance with his proposed inspection protocol as presented in the letters, the trial court denied it because the demand failed to comply with the inspection demand format requirements contained in Code of Civil Procedure section 2031.030.

With respect to the motion for a protective order, the court began by observing that the County had not been required to treat the November 20 and November 30, 2020, letters like new demands, but had done so anyway. The court noted the County then objected to the demands, but agreed to provide Rab access to the Tally Center if he was willing to accept the protocol terms it outlined in its responses to his letters.

The court granted the motion for a protective order, on the grounds that the County was not required to make the Tally Center available because Rab had failed to serve a demand that complied with the Civil Discovery Act. The court noted Rab had argued the motion for protective order was not timely, and that it ought to have been filed closer to the date the July 7, 2020, demand was made. While the court agreed a motion for a protective order based on the July 7, 2020, demand would not be considered prompt, as would be required by Code of Civil Procedure section 2031.060, subdivision (a), it concluded in this circumstance it was reasonable for the County to treat Rab's November letters as a new demand and, in that case, a motion for protective order was timely.

The court also addressed Rab's argument at the hearing that the County's motion ought to have been denied because the County had failed to include a meet and confer declaration with its motion for a protective order. The court was not persuaded by this

argument, largely because Rab failed to raise it in his opposition papers, but also because the record reflected the County had made an effort to meet and confer regarding the scope and appropriateness of an inspection prior to bringing the motion for a protective order.

DISCUSSION

I

*The County Did Not Violate Elections Code Section 15101*

Rab argues that the trial court incorrectly interpreted Elections Code section 15101, subdivision (b), to permit County workers to access and scan vote by mail ballots prior to election night. He suggests that in scanning the ballots into the Tally System before election day, the County violated the statute's prohibition on accessing and releasing a vote count prior to 8 p.m. on the day of an election, contrary to the public interest. There is no merit to these arguments.

A.     "Machine Reading" Incudes "Scanning"

In defining "Processing" to include "machine reading" vote by mail ballots, Elections Code section 15101, subdivision (b), permitted the County to scan vote by mail ballots into the Tally System as early as "the 10th business day before the election."

" ' "When we interpret a statute, '[o]ur fundamental task … is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning.' " ' " (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673 (*Brennon B.*).) " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [].) 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it.' (*Morton Engineering & Construction, Inc. v. Patscheck* (2001)

13

87 Cal.App.4th 712, 716 []; see *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 476 [] [' " ' "An intent that finds no expression in the words of the statute cannot be found to exist" ' " '].)" (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 266.)

" ' " 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. . . . .' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617 [], quoting *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166 [].)" (*Brennon B.*, *supra*, 13 Cal.5th at p. 673.)

Courts of appeal review questions of statutory interpretation de novo. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.)

Rab suggests that by interpreting Elections Code section 15101, subdivision (b), to allow ballots to be scanned prior to election night, the trial court improperly inserted qualifying provisions into the statute. We disagree. In interpreting "processing" as defined to include scanning, the trial court was simply applying a "plain and commonsense meaning" to the term "machine reading," particularly as that term is read "in the context of the entire statute," which provides authority and instructions for the processing of ballots by counties that have the "computer capability" to process ballots in an election. (See *Brennon B.*, *supra*, 13 Cal.5th at p. 673; Elec. Code, § 15101, subd. (b).) An argument that Elections Code section 15101, subdivision (b), did not plainly authorize counties with computer capabilities to scan vote by mail ballots 10 business days before the election cannot be sustained.

14

B.    No Evidence Suggests that Scanning the Documents with the Tally System Violated Elections Code Section 15101, Subdivision (b)'s Prohibitions

No evidence suggests that scanning ballots into the Tally System in the March 2020 primary violated Elections Code section 15101, subdivision (b)'s, prohibition on accessing and releasing vote counts before 8 p.m. on election night.

The trial court referred to Rab's purported experts as "self-identified" experts and, in a footnote, found they failed to qualify as experts.  However, the trial court also considered the purported experts' description of how the system worked in concluding that Rab did not produce evidence that the County accessed a vote count before election night at 8 p.m.  In identifying the issues on appeal and making his argument, Rab does not contest this finding with a supported argument.  Instead, he incorrectly states that the trial court "accepted that declarants are indeed experts."  Here, we treat the declarations like the trial court treated them:  while we do not concede that Rab's purported experts are, in fact, experts, we find that even if their descriptions of the VSAP and its Tally System are correct, Rab's argument lacks factual support and merit

Rab's purported experts and the County declarant's description of VSAP and the Tally System do not vary in any meaningful detail.  Both Rab's declarants and the County declarants discuss how the Tally System can both capture individual votes by converting them into CVRs and, in turn, tabulate total votes.  Bhullar, in his declaration for the County, states that scanning and tabulation do not occur simultaneously.  Bhullar and Logan described how, while scanning may have occurred before election day, tabulation did not occur until after 8 p.m. on election day, when someone in the Registrar-Record/County Clerk's Office executed a command to tally the votes on a portion of the Tally System hardware other than the scanners.  Similarly, Rab's experts describe the Tally System as having *four* processes, of which scanning and capturing the ballots are two processes and tallying the votes is another process—i.e., his purported

15

experts do not describe the process of scanning and tallying as happening in one simultaneous process.

Rab's argument appears to rest upon the fact that, as described by his purported experts, once ballots were scanned and converted into CVRs, votes—and the ability to tally them—became accessible. He seems to view this accessibility as tantamount to actually accessing the vote count. For example, in his opening brief, he discusses how CVRs—the records of individual votes—are "accessed" by the Tally System once scanned. But the existence of individual vote records on a scanner and the potential to execute a command on a separate piece of hardware to tally those individual votes into a vote count is not the same as actually creating and accessing a vote count.

The County declarants represented that the County does not execute a command to count votes before 8 p.m. on election night in general, and that the County specifically did not do so during the March 2020 primary, and Rab has offered no evidence to suggest this is untrue. Creating readable individual voting records that make a vote count accessible through secured channels is not the same as actually creating and accessing a vote count before 8 p.m. on election day. Thus, scanning vote by mail documents into the Tally System, as described by the evidence, before an election does not violate Elections Code section 15101, subdivision (b)'s prohibition on accessing a vote count before 8 p.m. on the night of an election.

II

*Rab Has Not Demonstrated the Trial Court Was Biased or Prejudiced*

Rab argues the trial court was biased and prejudiced against him. He has failed to prove the trial judge was biased in making the trial court's rulings.

A trial judge must be disqualified if, for any reason, "[t]he judge believes there is a substantial doubt as to his or her capacity to be impartial," or "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

16

(Code Civ. Proc., § 170.1, subd. (a)(6).) "At the request of a party . . . an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." (Code Civ. Proc., § 170.1, subd. (c).)

" 'Where the average person could well entertain doubt whether the trial judge was impartial, appellate courts are not required to speculate whether the bias was actual or merely apparent, or whether the result would have been the same if the evidence had been impartially considered and the matter dispassionately decided [citation], but should reverse the judgment and remand the matter to a different judge for a new trial on all issues.' (*Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 247 [].)" (*Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 1009.)

A party submitting a brief in an appeal must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal Rules of Court, rule 8.204(a)(1)(C).) In light of this requirement, one would expect that a party alleging the trial court was biased or prejudiced against them would identify statements or actions made by the trial court reflecting either (a) the court harbored a particular form of bias against the party specifically; or (b) the trial court possessed a general bias against a class of persons to which the party belongs. Rab has not done this. Additionally, our own review of the trial court's rulings and the reporter's transcript in this case does not suggest bias or prejudice on the part of the trial judge toward Rab himself or towards a particular class of persons in general.

Instead, Rab points to the trial court order in which the trial court granted the County's request for a protective order, denied his motion to compel, and awarded sanctions to the County for the amount it incurred opposing the motion to compel. Specifically, Rab states that in granting the motion for a protective order, the trial court treated a letter he wrote regarding an inspection as a new demand, but when it denied his motion to compel, it treated that same letter as *not* a new demand. He also argues that the

17

trial court ignored legal requirements regarding the proper procedure for filing a motion for protective order when it granted the motion for a protective order.

Rab's argument paints a misleading picture regarding the reasoning the trial court applied when it ruled on the discovery motions. With respect to the motion to compel, the trial court treated the motion as based on the July 7, 2020, demand after giving Rab ample opportunity to clarify which document he was treating as the applicable demand, and he then insisted at the hearing that the only demand at issue was the July 7, 2020, inspection demand. In contrast, the County informed the court it was seeking protection from what it saw as a new series of demands that began with the November 20, 2020, letter. In short, the trial court considered the motion to compel as if it was based on the July 7, 2020, demand, because that is the demand regarding which Rab sought relief. In contrast, it considered the motion for protective order as based on the November 20, 2020, letter, because that is the demand regarding from the County sought relief.

Moreover, the court's analysis makes clear that how it treated the various demands and communications in considering the motions did not result in any unfairness to Rab. After rejecting a motion to compel a response to the July 7, 2020, demand as untimely, the trial court also explained why it would not have issued an order compelling compliance with the demands Rab made in November and December 2020 even if he had expressly sought that relief. The court stated to the extent those requests were new requests, they were not properly formatted. Then, in granting the protective order, it again noted to the extent the November 20, 2020, letter was a new demand, it had failed to comply with the formatting requirements for requests under the Civil Discovery Act. In short, the trial court first explained why Rab was not entitled to the relief he wanted if based on the earlier request he believed should form the basis for his motion; then, it explained to him why the ruling would not be different if based upon the later requests which ultimately served as the basis for its determinations on the County's motion.

18

As to the trial court's rejection of Rab's argument, made for the first time at the hearing, regarding the County's need to meet and confer, even if we were to disagree with the ruling—which we do not—even "[e]rroneous rulings against a litigant, even when numerous and continuous, do not establish a charge of bias and prejudice. (*McEwen v. Occidental Life Ins. Co.* (1916) 172 Cal. 6, 11 [].)" (*Dietrich v. Litton Industries, Inc.* (1970) 12 Cal.App.3d 704, 719.) That Rab disagrees with how the court ruled regarding the County's compliance with requirements to meet and confer prior to bringing a motion for protective order is hardly evidence that "the average person could well entertain doubt whether the trial judge was impartial," (see *Haluck v. Ricoh Electronics, Inc., supra,* 151 Cal.App.4th at p. 1009) particularly in light of the extensive thought and care that went into the trial judge's rulings in this matter.

III

*Arguments Made in Reply*

In his reply brief, Rab argues the respondents failed to accurately address the issues he raised in his opening brief. We have considered this appeal after identifying the issues as framed in Rab's opening brief, both as stated in his statement of issues and as articulated in his argument, and we find the appeal lacks merit when we consider his argument on those issues.

Also, in his reply, in an effort to respond to arguments made by the Secretary, Rab argues his claims against the Secretary have merit because the Secretary failed to exercise oversight of Logan. As we find Rab has failed to demonstrate that Logan violated any laws, his claims against the Secretary also lack merit.

Finally, in his reply, Rab argues the alleged misconduct under Elections Code section 15101, subdivision (b), is also "malconduct" under Elections Code section 16100. Because the evidence does not show the County violated Elections Code section 15101,

19

subdivision (b), we find no violation of Elections Code section 16100 under Rab's proffered theory.

DISPOSITION

We affirm the trial court's judgment.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278 (a) (1), (2).)


_____

HULL, J.


We concur:


_____

ROBIE, Acting P. J.


_____

BOULWARE EURIE, J.