Filed 5/6/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANDREW REYNOSA,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF TULARE COUNTY,<br><br>Respondent;<br><br>ADVANCED TRANSPORTATION SERVICES, INC.,<br><br>Real Party in Interest. | F086342<br><br>(Super. Ct. No. VCU278374)<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Bret D. Hillman, Judge.

Makarem & Associates and Deborah P. Gutierrez for Petitioner.

No appearance for Respondent.

Williams Brodersen Pritchett & Burke and Nick Pritchett; McCormick, Barstow, Sheppard, Wayte & Carruth and Todd W. Baxter for Real Party in Interest.

-ooOoo-

Petitioner Andrew Reynosa and real party in interest Advanced Transportation Services, Inc. (ATS) initiated arbitration in 2019. On March 20, 2023, Reynosa filed a motion to withdraw from arbitration with the Tulare County Superior Court. Citing Code of Civil Procedure[1] section 1281.98, he argued ATS twice failed to pay the fees and costs required to continue arbitration within 30 days after the due date and therefore waived the right to compel him to proceed with arbitration. On April 18, 2023, the superior court issued an order denying the motion.

Thereafter, Reynosa filed a "petition for writ of mandate or other appropriate relief" (boldface & capitalization omitted), asking us to issue a stay of the arbitration proceeding pending determination of this petition and a writ of mandate directing the superior court to vacate its April 18, 2023 order and enter a new order granting his motion to withdraw from arbitration. We granted Reynosa's stay request and later issued an order to show cause why writ relief should not be granted. ATS filed a written return and Reynosa filed a reply to said return.[2]

For the reasons set forth below, we conclude the superior court erroneously denied Reynosa's withdrawal motion and Reynosa is entitled to writ relief.

## BACKGROUND

Reynosa was previously employed by ATS. On March 3, 2017, he signed the company's "Arbitration Agreement," (boldface omitted) which provided in part:

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Code of Civil Procedure.

[2] ATS filed an informal response to the writ petition on July 21, 2023. Per our June 2, 2023 order, Reynosa had 20 days from the date of the filing of the informal response to submit an informal reply. He did not do so. On August 21, 2023, Reynosa filed a "motion for permission to submit late filing pursuant to CCP § 4[73] . . . ." (Boldface & capitalization omitted.) Having not yet addressed this motion, we now exercise our discretion pursuant to section 473, subdivision (b) and deny it as it is redundant to Reynosa's reply to ATS's return.

2.

"In the event of any dispute arising under or involving any provision of the employment relationship or any dispute regarding the employment of the undersigned employee (hereinafter referred to as 'employee') with the Company, . . . **employee and the Company** agree to submit any such dispute to binding arbitration pursuant to the provisions of Title 9 of Part III of the California Code of Civil Procedure, commencing at Section 1280 et seq. (or any successor or replacement statutes) within one year of the date the dispute first arose, or within one year of the termination of employment, whichever occurs first . . . .

"**Employee and the Company agree that arbitration shall be the exclusive forum for resolving all such disputes. This agreement is a waiver of all rights to a civil court action, including all class action lawsuits. A decision through arbitration, not by a judge or jury, will decide the dispute. [¶] . . . [¶]**

"The employee and [t]he Company shall each bear their own costs for counsel or legal representation at any such arbitration. The cost of the arbitrator, court reporter, if any, and any incidental costs of arbitration shall be borne by the Company with the exception of the Initial Case Management Fee. The Initial Case Management Fee shall be paid equally by the Company and the Employee. However, the employee portion of the one-time Case Management Fee shall not exceed $400.00. Any Initial Case Management Fee charged to the employee in excess of $400.00 shall be paid by the Company. . . ."

The agreement did not address when arbitration fees and costs needed to be paid.

On April 26, 2019, Reynosa filed a "complaint for damages" (boldface & capitalization omitted) against ATS with the superior court. On July 8, 2019, the parties stipulated Reynosa would submit his claims to binding arbitration pursuant to the aforementioned agreement and the court proceeding would be stayed pending completion thereof.

On September 9, 2019, Reynosa filed a demand for arbitration with arbitration provider Judicate West. Under the heading "WHAT RULES OF ARBITRATION DO YOU PREFER," (boldface omitted) he marked the checkbox for "CCP § 1280 et se[q]." Retired judge John L. Wagner would serve as the neutral arbitrator.

On September 10, 2019, Reynosa paid a $250 filing fee.

3.

On October 9, 2019, Judicate West posted ATS's $250 filing fee. ATS paid $250 on October 14, 2019.

On August 5, 2020, Judicate West posted an invoice totaling $8,180: $7,680 for a retainer; $250 for Reynosa's case management fee; and $250 for ATS's case management fee. ATS paid $8,180 on August 12, 2020.

In a July 19, 2021 e-mail to counsel, Judicate West's case manager wrote in part:

> "This email summarizes the agreed upon scheduling information, advises of important dates and highlights key requests, all of which is reflected in your forthcoming confirmation notice & invoice.
>
> "● **10/29/2021 – Final Date for Payment** – Please see the attached fee schedule for further information. **Your invoice will follow** with a confirmation notice to be signed and returned. . . .
>
> "● **11/5/2021 – Last day to continue and/or cancel without risk of incurring fees for the neutrals reserved time**. . . .
>
> "● **11/29/2021 – Briefs due**, unless another schedule was discussed and agreed to with your arbitrator. . . .
>
> "● **12/6-8/2021 – 10:00 am at Downtown LA**."

The attached "ARBITRATION AND PRIVATE JUDGING FEE SCHEDULE" stated in part: "**PLEASE NOTE**: All [Judicate West] invoices are due and payable upon receipt."

On July 21, 2021, Judicate West posted an invoice totaling $27,380: $3,840 for a retainer; $250 for Reynosa's case management fee; $250 for ATS's case management fee; and $23,040 for a hearing scheduled for April 17 through 19, 2023.[3] The invoice specified payment was "**due upon receipt**." ATS paid $27,130 on September 17, 2021, leaving a balance of $250.

---

[3] In contrast to the April 2023 dates listed in the invoice, the parties recalled the arbitration hearing was originally scheduled for December 6 through 8, 2021. Assuming the parties were correct, this would shed light on what "**12/6-8/2021 – 10:00 am at Downtown LA**" signified in the July 19, 2021 e-mail.

4.

In e-mail correspondences between October 22 and November 1, 2021, the parties agreed to postpone the December 2021 arbitration hearing and schedule a mediation on April 8, 2022.

In a December 6, 2022 e-mail to counsel, Wagner issued an "ARBITRATION MINUTE ORDER" (boldface & underlining omitted) "memorializ[ing] the case management conference conducted on December 6, 2022 . . . ."  He detailed:

"1. The parties have engaged in mediation, but the case did not settle.

"2. The parties are engaged in medical records discovery, the Claimant has designated experts, and meet-and-confer sessions are ongoing.  If issues remain the parties may invoke the expedited discovery hearing process.

"3. The next telephonic case management conference is set for March 7, 2023, at 9:00 a.m.  Judicate West will set up the call.  The venue for the arbitration (whether in-person or via Zoom) will be revisited.

"4. The telephonic pre-hearing conference is set for April 4, 2023, at 9:00 a.m.  Judicate West will set up the call."

In a December 9, 2022 e-mail to counsel, Judicate West's case manager wrote in part:

"The following session(s) have been scheduled for this matter:

"● **4/17/2023 – 4/21/2023 – 10:00 AM – Binding Formal Arbitration at Reserved – Location TBD**

      "●     **3/7/2023 – Case Management Conference Call** . . . .

      "●     **4/4/2023 – Telephonic Conference Call** . . . .

"● **4/10/2023 – Briefs Due (unless another schedule was discussed and agreed with your arbitrator)** . . . .

"● **3/2/2023 – Last day to continue and/or cancel without risk of incurring fees for the neutral's reserved time.**

"● **2/23/2023 – Preliminary Witness Lists Due** . . . .

"● **Fees Due** – The case management and initial retainer fees will be due upon receipt and the **Final Date for Payment of arbitration hearing fees and other outstanding invoices** will be **2/23/2023.** Your invoice will follow. . . ."

On December 12, 2022, Judicate West posted an invoice totaling $23,040: $7,680 for a retainer and $15,360 for a hearing scheduled for April 20 and 21, 2023. The invoice specified payment was "**due upon receipt to secure your reserved date(s)**."

In a January 31, 2023 e-mail to Judicate West and Reynosa's counsel Deborah Gutierrez, ATS wrote it "need[ed] more time to complete discovery" and requested a six-month postponement of the April 2023 arbitration hearing. In a reply e-mail, Gutierrez opposed postponement because "[t]his matter has been continued already once before causing significant delay to [Reynosa]'s right to arbitration."

A February 2, 2023 billing statement addressed to ATS's counsel showed ATS paid $27,130 on September 17, 2021, but still owed $23,290: the unpaid $250 charge on the July 21, 2021 invoice plus the $23,040 charge on the December 12, 2022 invoice. The statement specified payment was "**Due Upon Receipt**" and "**any remaining balance is due immediately**."

In a February 21, 2023 e-mail to Wagner and Gutierrez, ATS claimed "good cause" "to continue the arbitration dates," i.e., the delay of "medical records from the VA" needed to "schedule IMEs to examine the allegations of emotional damage pertaining to Mr. Reynosa's employment." According to the company, it would "not be able to comply with" or attend the following "due to the outstanding discovery": (1) a February 23, 2023 deadline for preliminary witness lists; (2) the March 2, 2023 deadline to continue or cancel the arbitration without incurring fees; (3) the April 4, 2023 telephonic conference; (4) the April 10, 2023 deadline for briefing; and (5) the April 17 through 21, 2023 arbitration hearing.

On February 22, 2023, ATS received an e-mail confirming its $23,290 payment to Judicate West.

6.

In a February 23, 2023 e-mail to counsel, Wagner (1) extended the deadline for preliminary witness lists "until the next case management conference, unless otherwise ordered"; (2) extended the cancellation deadline to March 9, 2023; and (3) asked Gutierrez whether "there is any objection to continuing the arbitration." In a reply e-mail, Gutierrez raised "no objection to the Witness List deadline extension to the next [case management conference], or March 7, 2023," but she sought clarification regarding the continuance request. In a follow-up e-mail, Wagner explained he "was not suggesting moving up the hearing on the merits" and "[t]he question is whether we move the hearing to a later time." In a February 24, 2023 e-mail to Wagner and ATS, Gutierrez stated she "[saw] no reason why the arbitration should be continued, or why [ATS] has been unable to conduct an IME." She added: "This case has been in arbitration since September 2019. It is my understanding that the purpose of arbitration is to provide an expeditious way to resolve cases. This case has languished and Mr. Reynosa deserves his day in court/arb."

In a March 7, 2023 e-mail to counsel, Wagner issued an "ARBITRATION MINUTE ORDER" (boldface & underlining omitted) "memorializ[ing] the proceedings from the March 7, 2023, case management conference . . . ." He detailed:

> "1. [ATS] requested a continuance of the hearing on the merits due to ongoing difficulty in obtaining [Reynosa]'s military medical records, which are approximately 8 years old. All medical records since that time are available for the IME. [ATS] has delayed its IME awaiting the military records. [Reynosa] opposes the continuance, arguing this matter has already been unduly delayed. The military records are of marginal value because any current diagnosis or findings will rely upon and recite [Reynosa]'s medical history. The IME, if still desired, will proceed without the military records. [ATS]'s request for a continuance is denied, and the hearing on the merits will proceed as scheduled, from April 17, 2023, through April 21, 2023 (5 days). . . . [¶] . . . [¶]

> "3. The current hearing setting is within Judicate West's 45-day cancellation fee period. . . . Judicate West has agreed to shorten the cancellation fee period to 30 days before the hearing on the merits, making

7.

March 20, 2023, the last day to cancel the arbitration hearing without a cancellation fee. Should unforeseen circumstances require a continuance of the April 17, 2023, hearing the 45-day cancellation period will again pertain.

"4. The parties shall exchange preliminary witness lists and make expert disclosures by March 24, 2023.

"5. The parties shall exchange final witness lists . . . and exhibit lists by April 4, 2023. . . .

"6. A joint set of exhibits to be used in the hearing will be provided to the Arbitrator by April 10, 2023. . . .

"7. Opening briefs will be submitted by April 10, 2023. . . ."

On March 20, 2023, Reynosa filed a "motion to terminate arbitration and request for monetary and evidentiary sanctions" (boldface & capitalization omitted) with the court. In the motion, Reynosa—citing section 1281.98—asserted ATS materially breached the arbitration agreement because (1) it was given invoices on July 21, 2021, and December 12, 2022, respectively; (2) each payment was due within 30 days after the date of receipt; and (3) each payment was rendered after the grace period elapsed. Hence, Reynosa was "statutorily entitled to unilaterally withdraw his claims from arbitration and proceed in court . . . ." In an attached declaration, Gutierrez averred that on March 17, 2023, she "inquired with [Judicate West's case manager] if ATS had timely paid the arbitration fees in this matter" and the case manager "confirmed that Defendant had . . . paid the December 12, 202[2] [invoice] on February 22, 2023 . . . ."

Wagner was notified of Reynosa's motion on March 24, 2023, and e-mailed counsel an "ARBITRATION MINUTE ORDER" (boldface & underlining omitted) on March 31, 2023. In said order, Wagner conceded ATS's payments were late but noted Reynosa "did have the opportunity to request this relief before significant work was done and non-refundable arbitration fees were paid" and nonetheless "elected on numerous occasions to proceed with the arbitration process after the alleged tardy payments occurred." Wagner stated: (1) "[t]he first tardy payment was made on September [17],

2021, more than 18 months ago," but Reynosa "sat on his rights under § 1281.98 and did nothing"; and (2) "[t]he last tardy payment was on February 22, 2023"; during the March 7, 2023 case management conference, Reynosa "successfully resisted [ATS]'[s] request for a continuation of the present April 17, 2023, hearing date" and Wagner "shortened the refundable date for the arbitration hearing fees to March 20, 2023"; and Reynosa "waited until that very date to file [his] Motion to Terminate Arbitration and advised [Wagner] of the filing of that motion on March 24, 2023, after the shortened non-refundable period had ended," prejudicing ATS financially. Wagner vacated the hearing dates and stayed the arbitration proceeding "pending a decision on [Reynosa]'s Motion to Terminate Arbitration by the Tulare Superior Court."

On April 18, 2023, the superior court held a hearing on Reynosa's withdrawal motion. The court remarked:

> "Well, from the Court's perspective, defendant paid the dates set by the arbitrator in the email. Counsel for plaintiff never objected. No one ever told the Court in the multiple [case management conferences] we had – the last time we talked, arbitration was supposed to start yesterday. Counsel elected to continue despite these alleged defaults. And I think they either paid prior to the due dates as set in the emails pursuant to the statute under 1281.98(a)(2) or elected to continue under 1281.98(b)(2). . . ."

Gutierrez responded:

> "[E]verybody goes, 'Why did you wait until just right now, Ms. Gutierrez?' Well, part of the problem is Judicate West does not provide transparency to the parties in terms of when payments are made. Judicate West has a portal for both parties, one for the plaintiff and one for the defendant. And there's a tab that says 'fees.' When you click on 'fees' if you're the plaintiff, you only look at the $[2]50 initial fee that you paid. It doesn't give you the full ledger that the defendant has when they click on the tab 'fees.' They have a full ledger of when and where payments were made, sent, when they were paid. They have all of that information.
>
> "And so when people look at me and say, 'Oh, why did you wait?' Because I just realized, partly because of this lack of transparency of Judicate West and partly because they're telling their case managers to misrepresent the code to the parties. This is when I first found out that, in

9.

fact, counsel had not made the payment. So in part, this is – Judicate West is not only . . . not providing transparency to the parties, but misrepresenting to the parties under the code when payment should be made.

". . . Neither Judicate West nor [Judicate West's case manager] nor anybody else has the right to alter the code. And nowhere in the pleadings is there any evidence that either plaintiff or myself conceded or had any mutual consent in any way whatsoever to alter the code or alter the terms of payment."

Thereafter, the court denied the motion. It reasoned in its order:

"[J]ust as clear-cut is section 1281.98(a)(2)'s statement that '. . . Any extension of time for the due date shall be agreed upon by all parties.' The emails from the arbitration organization set forth different, specific due dates that appear to have been agreed upon by all parties. To be sure, Plaintiff did not object to these extended payment deadlines when proposed.

"Therefore, although Defendant was sent a July 21, 2021 invoice due upon receipt that was paid September [17], 2021 and a December 12, 2022 invoice due upon receipt that was paid February 22, 2023, the payment deadlines were extended to October 29, 2021 and February 23, 2023. Defendant, therefore, does not appear to have paid the fees due beyond the 30-day deadlines mutually agreed upon by the parties.

"Plaintiff, therefore, would not appear to have the right to unilaterally elect to terminate arbitration due to the timely payment of fees owed by Defendant pursuant to the modified schedule."

On June 1, 2023, Reynosa filed the writ petition. In the order to show cause, we directed ATS to respond to the following questions:

"(a) In finding the parties mutually agreed to extend the deadline to pay the December 12, 2022 invoice, did the trial court make factual findings entitled to review under the substantial evidence standard? If not, is there a material dispute of fact relating to the issuance and payment of the December 12, 2022 invoice?

"(b) Is silence or the failure to object to a proposed later payment deadline a sufficient manifestation of intent by a consumer or employee to find an agreement to extend the payment deadline under . . . section 1281.98, subdivision (a)(2)?"

10.

## DISCUSSION

**I.     Propriety of writ review**

"Writ review is appropriate when '(1) "the remedy by appeal would be inadequate" [citation] or (2) the writ presents a "significant issue of law" or an issue of "widespread" or "public interest" [citations].' [Citation.]" (*Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 773, fn. 2 (*Espinoza*).)  Here, both conditions are met.  First, the superior court's order denied Reynosa's motion to withdraw from arbitration. "[R]equiring plaintiff to proceed through an arbitration before [he or] she can challenge the order on appeal would be a waste of time and resources, for which the appeal would be an inadequate remedy." (*Ibid.*; see *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 889 [" '[W]rit review is proper . . . to avoid an arbitration based on erroneous rulings of law, which may result in needless delay and expense.' "]; *Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008, 1014, fn. 7 ["Writ review is the appropriate way to review the challenged order and avoid having parties try a case in a forum where they do not belong, only to have to do it all over again in the appropriate forum."].)  Second, the interpretation and enforceability of section 1281.98 "presents significant issues of law." (*Espinoza*, *supra*, at p. 773, fn. 2.)[4]

**II.     Section 1281.98**

"The Legislature enacted section 1281.98 in 2019 to curb a particular arbitration abuse.  The abuse was that a defendant could force a case into arbitration but, once there,

---

[4] We note *Espinoza* focused on section 1281.97.  (See *Espinoza*, *supra*, 83 Cal.App.5th at p. 775.)  Section 1281.97 "concerns a failure to timely pay 'the fees or costs to *initiate*' an arbitration proceeding" (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750 (*De Leon*)) whereas section 1281.98 "concerns a failure to timely pay 'the fees or costs required to *continue*' an arbitration proceeding" (*ibid.*).  The parties agree section 1281.98 controls in the instant case.  Regardless, sections 1281.97 and 1281.98 " 'largely parallel' each other" (*De Leon*, at p. 750) and—where appropriate—an analysis as to one "applies with equal force" to the other (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 633, fn. 4 (*Gallo*)).

11.

could refuse to pay the arbitration fees, thus effectively stalling the matter and stymying the plaintiff's effort to obtain relief." (*Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1076 (*Cvejic*).) Section 1281.98 "grants deliverance from this procedural purgatory by deeming late payment to be a material breach of the arbitral agreement that gives the affected employee or consumer the choice of . . . treating the arbitration agreement as being rescinded and returning to a judicial forum . . . ." (*Gallo*, *supra*, 81 Cal.App.5th at p. 634; see *De Leon*, *supra*, 85 Cal.App.5th at p. 751.)

Section 1281.98, subdivision (a)(1)—formerly subdivision (a) (see Stats. 2019, ch. 870, § 5)—reads:

> "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party[5] pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach."

Section 1281.98, subdivision (b) reads in part:

> "If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may unilaterally elect to do any of the following:

> "(1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction. . . .

---

[5] " 'Drafting party' means the company or business that included a predispute arbitration provision in a contract with a consumer or employee." (§ 1280, subd. (e).)

"(2) Continue the arbitration proceeding, if the arbitration provider[6] agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs. . . .

"(3) Petition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration provider.

"(4) Pay the drafting party's fees and proceed with the arbitration proceeding. As part of the award, the employee or consumer shall recover all arbitration fees paid on behalf of the drafting party without regard to any findings on the merits in the underlying arbitration."

In 2021, via Senate Bill No. 762 (2021–2022 Reg. Sess.) (Senate Bill No. 762), the Legislature "added a new subdivision to section 1281.98 that compelled arbitrators to provide invoices to all parties, specified requirements for these invoices, and clarified the due date for fees." (*Cvejic*, *supra*, 92 Cal.App.5th at p. 1077, citing Stats. 2021, ch. 222, § 3.) This subdivision—i.e., subdivision (a)(2) of section 1281.98—reads in part:

"The arbitration provider shall provide an invoice for any fees and costs required for the arbitration proceeding to continue to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day. To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt. Any extension of time for the due date shall be agreed upon by all parties. . . ."[7]

Subdivision (a)(2) became effective January 1, 2022. (*Cvejic*, *supra*, 92 Cal.App.5th at p. 1077; see Cal. Const., art. IV, § 8, subd. (c)(1); Gov. Code, § 9600, subd. (a).)

---

[6] Prior to 2022, subdivision (b) of section 1281.98 used the term "arbitration company" (Stats. 2019, ch. 879, § 5) rather than "arbitration provider" (Stats. 2021, ch. 222, § 3).

[7] We point out subdivision (a)(2) of section 1281.97, which was also added in 2021, does not permit due date extensions. (See Stats. 2021, ch. 222, § 2.)

## III. Standard of review

"Ordinarily, a trial court's determination [as to whether] a party waived the right to arbitrate is subject to substantial evidence review. [Citation.] However, where the parties do not dispute the factual support for the trial court's ruling, but instead dispute the proper interpretation of section 1281.98, the appellate court's review is de novo. [Citations.]" (*Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 353 (*Doe*); accord, *De Leon*, *supra*, 85 Cal.App.5th at p. 749.)

" 'Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo.' [Citation.] 'Because the interpretation and application of a statute are questions of law, an appellate court is not bound by the trial judge's interpretation.' [Citation.] Instead, 'we undertake our own interpretation of the determinative statute and assess any claims raised by the parties completely anew.' [Citation.]" (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 265–266 (*Cal. State Fresno*).)

" 'In ascertaining the meaning of a statute, we look to the intent of the Legislature as expressed by the actual words of the statute' [citation], 'giving them a plain and commonsense meaning' [citation]. 'We examine the language first, as it is the language of the statute itself that has "successfully braved the legislative gauntlet." [Citation.] "It is that [statutory] language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' " [Citation.]' [Citation.]" (*Cal. State Fresno*, *supra*, 9 Cal.App.5th at p. 266; see *De Leon*, *supra*, 85 Cal.App.5th at p. 750.)

" 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it.' [Citations.] 'We will not speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent.' [Citations.]" (*Cal. State Fresno*, *supra*, 9 Cal.App.5th at p. 266; see *De Leon*, *supra*, 85 Cal.App.5th at p. 750.) " 'If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved" ' and the statute's legislative history. [Citation.]" (*De Leon*, *supra*, 85 Cal.App.5th at p. 750; accord, *Doe*, *supra*, 95 Cal.App.5th at p. 355.)

## IV.  Analysis

In his writ petition, Reynosa argues ATS "failed to remit payment of the arbitration fees within the statutorily prescribed thir[ty]-day period" (boldface & capitalization omitted) on two occasions. First, the company received a $27,380 invoice "**due upon receipt**" on July 21, 2021, and rendered its $27,130 payment more than 30 days later on September 17, 2021. Second, the company received a $23,040 invoice "**due upon receipt**" on December 12, 2022, and rendered its $23,290 payment more than 30 days later on February 22, 2023. We address these contentions seriatim.

### a. *July 21, 2021 invoice*

The record demonstrates Judicate West posted an invoice totaling $27,380 on July 21, 2021. Said invoice specified payment was "**due upon receipt**." Judicate West's "ARBITRATION AND PRIVATE JUDGING FEE SCHEDULE" (boldface omitted) reiterated "[a]ll [Judicate West] invoices are due and payable upon receipt." However, in an e-mail to counsel sent on July 19, 2021, Judicate West's case manager indicated the parties "agreed upon" October 29, 2021, as the "**Final Date for Payment**."

Section 1281.98 as it then existed—i.e., without subdivision (a)(2)—did not prescribe how to establish and/or modify the "due date" from which the 30-day grace

15.

period begins to run. Thus, October 29, 2021, appears to be the appropriate due date, whether this date was amenable to both parties, amenable to only one party, or decided upon exclusively by Judicate West.

On September 17, 2021, well before the October 29, 2021 due date, ATS paid $27,130, leaving a balance of $250. In its return, ATS states it did not pay the extra $250 because this amount constituted "Plaintiff's Case Management Fee of $250.00, which Reynosa was obligated to pay under the terms of the arbitration agreement." In other words, the $250 "reflects Reynosa's share of" the "initial case management fee."

Pursuant to the arbitration agreement, "[t]he cost of the arbitrator, court reporter, if any, and any incidental costs of arbitration shall be borne by the Company with the exception of the Initial Case Management Fee. The Initial Case Management Fee shall be paid equally by the Company and the Employee. . . . [T]he employee portion of the one-time Case Management Fee shall not exceed $400.00." While the July 21, 2021 invoice did identify a $250 charge for Reynosa's case management fee, the record shows (1) almost a year earlier, an August 5, 2020 invoice also identified a $250 charge for Reynosa's case management fee; and (2) this amount was paid by ATS on August 12, 2020. Logically, the subsequent $250 charge on the July 21, 2021 invoice cannot be considered the "initial" case management fee.[8] Therefore, the contractual exception was inapplicable. Moreover, ATS ultimately paid the $250 on February 22, 2023.

The clear and unequivocal language of section 1281.98, subdivision (a)(1) "establishes a simple bright-line rule that a drafting party's failure to pay outstanding arbitration fees within 30 days after the due date results in its material breach of the arbitration agreement." (*De Leon*, *supra*, 85 Cal.App.5th at p. 753; see *Espinoza*, *supra*, 83 Cal.App.5th at p. 775 [§ 1281.97 "contains no exceptions for substantial compliance,

---

[8] In its informal response to Reynosa's writ petition, ATS acknowledges its October 14, 2019, and August 12, 2020 payments were for "[t]he fees for initiating the arbitration . . . ."

unintentional nonpayment, or absence of prejudice" (italics & some capitalization omitted)].)  Such a breach occurred here because ATS was supposed to pay $27,380 by October 29, 2021, but it remitted "less than the full amount due by the expiration of the statutory grace period" (*Gallo*, *supra*, 81 Cal.App.5th at p. 644) and settled the remaining $250 nearly 16 months after the due date.[9]

     b.  *December 12, 2022 invoice*

Effective January 1, 2022, section 1281.98, subdivision (a)(2) "clarified the due date for fees" (*Cvejic*, *supra*, 92 Cal.App.5th at p. 1077), requiring (1) arbitration providers to "issue all invoices to the parties as due upon receipt" (unless express contractual language provides otherwise) (§ 1281.98, subd. (a)(2)); and (2) "[a]ny extension of time for the due date" to be "agreed upon by all parties" (*ibid.*).

The record demonstrates Judicate West posted an invoice totaling $23,040 on December 12, 2022.  Said invoice specified payment was "**due upon receipt to secure your reserved date(s)**."  In addition, the arbitration agreement did not contain "an express provision . . . stating the number of days in which the parties to the arbitration must pay any required fees or costs . . . ."  (§ 1281.98, subd. (a)(2).)  In an e-mail to counsel sent on December 9, 2022, Judicate West's case manager identified February 23, 2023, as the "**Final Date for Payment of arbitration hearing fees and other outstanding invoices**."  In contrast to the July 19, 2021 e-mail, the December 9, 2022 e-mail did not contain any reference to the parties expressly agreeing to this due date. Neither the earlier December 6, 2022 e-mail nor the e-mails sent between January 31 and

<hr />

[9] In *Espinoza*, at the behest of the defendant/real party in interest, Division One of the Second Appellate District evaluated the legislative history of Senate Bill No. 707 (2019–2020 Reg. Sess.), which enacted section 1281.97.  (See *Espinoza*, *supra*, 83 Cal.App.5th at pp. 773, 777–778.)  In view of that history, the court rejected the argument that strict interpretation of the statute, which would penalize drafting parties for the mistake of paying " ' "a majority of the fees and costs, but [not] a small, minor portion" ' " (*id.* at p. 777), resulted in absurd consequences (*ibid.*).

March 7, 2023 established the parties directly discussed and/or agreed to a payment deadline beyond the one set forth in section 1281.98, subdivision (a).

Nevertheless, the superior court concluded the parties "mutually agreed upon" the February 23, 2023 due date, emphasizing Reynosa "did not object to the[] extended payment deadline[] when proposed" and Judicate West "set forth [other] different, specific due dates that appear to have been agreed upon by all parties." In its return, ATS contends "the substantial evidence standard applies to the trial court's finding of an agreement to extend the deadline to pay the December 12, 2022 invoice." (Boldface & some capitalization omitted.) We disagree. "When the facts are undisputed, the effect or legal significance of those facts presents a question of law, which we review de novo." (*Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764, 774, citing *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) We agree with Reynosa that "the parties do not dispute the factual support for the trial court's ruling"; instead, "they dispute the proper interpretation of [section] 1281.98." (See *Doe*, *supra*, 95 Cal.App.5th at p. 353; *De Leon*, *supra*, 85 Cal.App.5th at p. 749.)

Under section 1281.98, subdivision (a)(2), "[a]ny extension of time for the due date shall be agreed upon by all parties."[10] The verb "agree"—of which "agreed" is the past participle—is essentially undefined by the statute.[11] "Absent a statutory definition,

---

[10] The clear and unequivocal language "only contemplates extensions of the due date by agreement of the parties . . . ." (*Doe*, *supra*, 95 Cal.App.5th at p. 361; see *Quarry v. Doe I* (2012) 53 Cal.4th 945, 970 ["It is a settled rule of statutory construction that 'where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed.' "]; *Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894 ["[W]e presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language."].) Hence, an arbitration provider is not empowered to unilaterally extend the due date.

[11] Section 1280, subdivision (a) only provides the following description of an "agreement":

18.

we may turn to dictionaries to look for a word's usual, ordinary meaning." (*Doe*, *supra*, 95 Cal.App.5th at p. 356.) In Webster's II New College Dictionary (1995) at page 23, column 1, "agree" means "to grant consent," "to be in accord," "to be of one opinion," or "to come to an understanding or to terms." (Boldface & capitalization omitted.) In Black's Law Dictionary (11th ed. 2019) at page 84, column 1, "agree" means "to unite in thought," "to concur in opinion or purpose," "to exchange promises," or "to unite in an engagement to do or not do something." (Boldface & capitalization omitted.) Some definitions—e.g., "grant consent," "exchange promises"—suggest an agreement must be affirmatively communicated. Other definitions are so broadly worded as to allow inferences of agreement from the circumstances. Because the results of our inquiry are inconclusive, we may resort to the legislative history. (*Doe*, *supra*, 95 Cal.App.5th at p. 355; *De Leon*, *supra*, 85 Cal.App.5th at p. 750.)

In their analyses of Senate Bill No. 762, with respect to payment extensions, Senate committees articulated:

> "[T]o avoid the reported problem of one-sided payment extensions and extension-related delays, this bill requires all parties to an arbitration to agree before agreeing to a payment extension. Given that businesses already have a 30-day grace period after a due date in which to pay an arbitration fee without being in material breach of an arbitration clause, requiring the consumer or employee to agree to any further delay appears to be a fair balance between the parties' interests." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Consent Analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended Mar. 9, 2021, p. 2; Sen. Com. on Judiciary, analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended Mar. 9, 2021, p. 5.)

---

" 'Agreement' includes, but is not limited to, agreements providing for valuations, appraisals, and similar proceedings and agreements between employers and employees or between their respective representatives."

According to documents originating in both the Assembly and the Senate, by "permitting the plaintiff to have input into potential extensions of due dates, [Senate Bill No. 762] is intended to prevent arbitration providers from delaying payment in order to put off the strict 30-day deadline for payment . . . ."  (Off. of Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 3; Assem. Com. on Judiciary, analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 6.)  Finally, various documents incorporated the following remark from the California Employment Lawyers Association, Senate Bill No. 762's sponsor:

> "[Senate Bill No. 762] would require the provider to obtain the consent of all parties to extend deadlines for fees incurred during the pendency of the arbitration."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Arguments in Support of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 4; Off. of Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 4; Assem. Com. on Judiciary, analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended June 14, 2021, p. 7; Sen. Rules Com., Off. of Sen. Floor Analyses, Consent Arguments in Support of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended Mar. 9, 2021, p. 3; Sen. Com. on Judiciary, analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended Mar. 9, 2021, p. 6.)

From the foregoing passages, it is clear the Legislature sought to preempt undisclosed payment extensions that exploited a loophole in section 1281.98, former subdivision (a).  As one mechanism to achieve this objective, the statute was amended to prohibit an arbitration provider, which "may be financially interested in continuing the arbitration and in pleasing regular clients" (*Cvejic*, *supra*, 92 Cal.App.5th at p. 1079), from implementing a due date extension without first affording the consumer or employee claimant the opportunity to give input thereon and then *obtaining the consent* of all parties (including said claimant) thereto.  (See Black's Law Dict., *supra*, at p. 1297, col. 1 ["obtain" means "to bring into one's own possession; to procure, esp. through effort" or "to succeed either in accomplishing (something) or in having it be

accomplished; to attain by effort" (boldface & capitalization omitted)]; Webster's II New College Dict., *supra*, at p. 756, col. 1 ["obtain" means "to gain possession of, esp. by intention or endeavor : acquire" (boldface & capitalization omitted)].)  In our view, the construction of "agreed" in section 1281.98, subdivision (a)(2) advanced by ATS and adopted by the superior court undermines the legislative intent:  by letting a claimant's silence, failure to object, or other seemingly acquiescent conduct (not amounting to direct expression) constitute a sufficient manifestation of his or her agreement to an extension, the need for the arbitration provider or the business/employer to actively procure such consent—e.g., by having the claimant sign an acknowledgement form—is obviated. Furthermore, placing this onus on these entities is consonant with the overall tenor of section 1281.98, subdivision (a)(2), which also obligates (1) the arbitration provider to furnish comprehensive "due upon receipt" invoices to all parties "by the same means on the same day" (*ibid.*);[12] and (2) the "company or business that included a predispute arbitration provision in a contract with a consumer or employee" (§ 1280, subd. (e)) to add "an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs" (§ 1281.98, subd. (a)(2)) in order to supersede the "due upon receipt" default.  (See *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 903 [" 'Statutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts.' "].)

Reynosa did not directly express agreement with the February 23, 2023 due date. Therefore, pursuant to section 1281.98, subdivision (a)(2), the December 12, 2022

---

[12] Additionally, in 2023, the Legislature appended the following language to section 1281.98, subdivision (a)(2):

"Once the invoice has been paid, the arbitration provider shall provide to all parties a document that reflects the date on which the invoice was paid." (Stats. 2023, ch. 478, § 17.)

invoice was due upon receipt.  Pursuant to section 1281.98, subdivision (a)(1), ATS had until January 11, 2023, to pay the arbitration fees and costs.  By submitting payment on February 22, 2023, the company materially breached the arbitration agreement.  (See *De Leon*, *supra*, 85 Cal.App.5th at p. 749 ["[L]ate payment as provided in section 1281.98 constitutes a 'material breach' without regard to any additional considerations."].)

      c.  *Election of remedies*

Because ATS materially breached the arbitration agreement, it waived the right to compel Reynosa to proceed with arbitration.  (§ 1281.98, subd. (a)(1).)  As mentioned, "[i]f the drafting party materially breaches the arbitration agreement and is in default under [section 1281.98,] subdivision (a), the employee or consumer may unilaterally elect to"—among things—"[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" (§ 1281.98, subd. (b)(1)) or "[c]ontinue the arbitration proceeding, if the arbitration provider agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs" (§ 1281.98, subd. (b)(2)).  Reynosa filed the withdrawal motion on March 20, 2023.  In its return, ATS counters the motion is precluded because "[Reynosa's] counsel, on multiple occasions, elected to continue with arbitration."  As supporting evidence, the company refers to e-mails predating March 17, 2023, in which Reynosa's counsel Gutierrez never sought to halt the arbitration proceeding, bemoaned the hearing delays, and vehemently opposed further postponement.

" ' "An election of remedies is defined as the choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts."  [Citation.]  "Election of remedies has been defined to be the right to choose or the act of choosing between different actions or remedies where [the] plaintiff has suffered one species of wrong from the act complained of.  Broadly speaking, an election of remedies is the choice by a plaintiff to an action of one of two or more coexisting

remedial rights, where several such rights arise out of the same facts, but the term has been generally limited to a choice by a party between inconsistent remedial rights, the assertion of one being necessarily repugnant to or a repudiation of the other." [Citation.]' [Citation.]" (*Schumm v. Berg* (1951) 37 Cal.2d 174, 189–190.) " 'The doctrine of election is applicable only when the party is cognizant of all the facts.' " (*Orlopp v. Willardson Co.* (1965) 232 Cal.App.2d 750, 756; accord, *Wells, Fargo & Co. v. Robinson* (1859) 13 Cal. 133, 142 (*Wells*) [" 'The general rule is, that the party is not bound to make an election, until all the circumstances are known . . . .' "].)  Without such knowledge, " 'it is impossible for the party to make a discriminating and deliberate choice, such as ought to bind him to reason and justice.' " (*Wells*, *supra*, at p. 142.)

ATS materially breached the arbitration agreement when it (1) failed to pay the entirety of the July 21, 2021 invoice within 30 days after October 29, 2021; and (2) failed to pay the December 12, 2022 invoice within 30 days after its receipt thereof.  A February 2, 2023 billing statement addressed to ATS's counsel showed the company paid $27,130 (not the full $27,380) of the first invoice on September 17, 2021.  A February 22, 2023 e-mail to ATS verified the company paid Judicate West $23,290 (the outstanding combined balance of both invoices) that day.  The record, though, does not demonstrate Reynosa received either the statement or the confirmation e-mail.  In her March 20, 2023 declaration, Gutierrez maintained she did not find out about the February 22, 2023 payment until she spoke with Judicate West's case manager on March 17, 2023.  ATS did not rebut this avowal.  None of the pre-March 17, 2023 e-mails relied upon by ATS detailed the company's payments to Judicate West.  At the April 18, 2023 motion hearing, Gutierrez indicated Judicate West's clients could log in to an online portal to manage their cases and remit payments.  However, a client could only see fees charged directly to and payments rendered by him or her and were not privy to the fees and payments associated with the opposing side.  The record contains a screenshot of the portal accessed by Reynosa's counsel's law firm, which merely showed Judicate West posted a

23.

$250 fee on September 9, 2019, and the law firm paid it on September 10, 2019. Nothing was disclosed as to the fees charged to and payments rendered by ATS.[13]

In view of the above, Reynosa's involvement in the arbitration proceeding prior to March 17, 2023, does not evince he deliberately chose to "[c]ontinue the arbitration proceeding" "notwithstanding [ATS]'s failure to [timely] pay fees or costs" (§ 1281.98, subd. (b)(2)) because he had not yet become cognizant of the untimely payments. It is evident one cannot elect a remedy to redress a wrong inflicted upon him or her when—at the time of the purported election—he or she was unaware of said wrong. To deem otherwise puts the proverbial cart before the horse.[14]

d. *Sanctions*

"A company that materially breaches an arbitration agreement under section 1281.98[, subdivision ](a) is also required to pay the 'reasonable expenses, including attorney's fees and costs, incurred by the employee . . . as a result of the material breach' [citation], and may also suffer an evidentiary, terminating, or contempt sanction unless it 'acted with substantial justification' or 'other circumstances make the imposition of the

---

[13] Lack of disclosure to claimants regarding exactly when arbitration fees and costs were paid may have been the impetus for the most recent amendment to section 1281.98, subdivision (a)(2). (See *ante*, fn. 12.)

[14] In its April 18, 2023 order, the superior court concluded—in the alternative—"if a material breach did occur," Reynosa "did seek to continue with the arbitration process in October 2021 and November 2021, confirming various arbitration dates." To the extent ATS believes this finding is entitled to deference, we disagree. The substantial evidence standard of review "operates only where it can be presumed that the court has performed its function of weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked." (*Estate of Larson* (1980) 106 Cal.App.3d 560, 567.) As mentioned, the doctrine of election of remedies only applies when the aggrieved party is aware of facts that would enable him or her to make a meaningful choice. (*Wells*, *supra*, 13 Cal. at p. 142; *Orlopp v. Willardson Co.*, *supra*, 232 Cal.App.2d at p. 756.) Here, the court ignored the evidence Reynosa was not apprised of ATS's untimely payments until March 17, 2023. Moreover, we point out the court limited its inquiry to Reynosa's conduct in late 2021, which would have no bearing on issues related to the December 12, 2022 invoice.

sanction unjust.' " (*Doe, supra*, 95 Cal.App.5th at p. 354, quoting § 1281.99, subds. (a) & (b).)

In his withdrawal motion, Reynosa asked for both monetary and nonmonetary sanctions. Upon remand, the superior court shall address these requests in conformance with section 1281.99.

## **DISPOSITION**

Let a writ of mandate issue directing the Tulare County Superior Court to (1) vacate its April 18, 2023 order denying plaintiff Andrew Reynosa's motion to withdraw from arbitration; (2) enter a new order granting his motion to withdraw from arbitration; and (3) hold proceedings to address his requests for sanctions under Code of Civil Procedure section 1281.99. In calculating the mandatory monetary sanction under subdivision (a) thereof, the court shall include Reynosa's reasonable attorney's fees incurred in prosecuting his writ petition. The stay of further proceedings in the superior court is vacated upon finality of this opinion. (*State Water Resources Control Bd. v. Superior Court* (2002) 97 Cal.App.4th 907, 919.) Costs are awarded to Reynosa. (Cal. Rules of Court, rule 8.493(a)(1)(A).)


DETJEN, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.

25.